Johnny HINES, Plaintiff-Appellant,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
Defendant-Respondent,

and

Kenneth and Raymond ROBINSON,
Plaintiffs-Appellants,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
Defendant-Respondent.

No. 64613.

Supreme Court of Missouri,
En Banc.

Aug. 16, 1983.

Rehearing Denied Sept. 20, 1983.

Don R. Sherman, Rosenberg, Weiss, Goffstein, Kraus & Seigel, St. Louis, Edward C. Vancil, Robert L. Striler, Clayton, for plaintiffs-appellants.

William F. James, R.C. Wuestling, Wuestling & James, St. Louis, for defendants-respondents.

Philip C. Denton, Hullverson, Hullverson & Frank, St. Louis, Edward W. Mullen, Gary M. Cupples, Deacy & Deacy, Richard H. Heilbron, Heilbron & Poweil, Kansas City, Robert W. Maupin, Columbia, George T. O'Laughlin, Kansas City, for amicus curiae.

BLACKMAR, Judge.

The problem before us has to do with the "stacking" of uninsured motorist coverage and with the ramifications of our decision in *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976). We have been aided in our task by the able briefing and fine oral argument in this case and in *Cano v. Travelers Insurance Company,* 656 S.W.2d 266 (Mo. banc 1983).

Warren Harper owned two automobiles, both of which were insured by the defendant insurance company under a single policy. The policy contained uninsured motorist coverage for both cars, as required by § 379.203, RSMo 1978, with the minimum coverage of $10,000 per person and $20,000 per accident then required by statute.[1]

Harper gave permission to plaintiff-appellant Johnny Hines to use one of his cars. Hines was driving and plaintiffs-appellants Kenneth Robinson and Raymond Robinson were passengers when the automobile collided with a vehicle negligently driven by John B. Scott, an uninsured motorist. The three plaintiffs each suffered injuries, which, combined, caused damages in excess of $40,000.

The plaintiffs brought suit against the insurance company alleging that a total of $40,000 of uninsured motorist coverage was available to them by reason of Harper's coverage for his two automobiles. They agreed on the division in the event of success. The insurance company asserted that, under the policy language, the three together had only $20,000 available, and that the policy provision so limiting the amount that could be recovered was valid and enforceable.

The trial judge entered judgment for the defendant insurance company, holding that the only coverage available was that which insured the automobile in which the plaintiffs were riding. The Court of Appeals, Eastern District, reversed by four to three vote of an expanded panel. The majority based its conclusion on *Cameron Mutual,* holding that the limitation to the uninsured coverage on the vehicle in which the plaintiffs were riding was invalid under that decision. It transferred the case here because of a perceived conflict between *Cameron Mutual* and its own decision in *Linderer v. Royal Globe Insurance Co.,* 597 S.W.2d 656 (Mo.App.1980), which the dissenting judges claimed was overruled by that court's majority opinion in this case. We

have the case as on original appeal. We conclude that the circuit court reached the correct decision, and affirm its judgment.

The relevant policy provisions are as follows:

PART IV—PROTECTION AGAINST UNINSURED MOTORISTS

Coverage J—Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

\*    \*    \*    \*    \*    \*

Definitions: The definitions under Part I, except the definition of 'insured,' apply to Part IV, and under Part IV:

'insured' means:

(a) the named insured and any relative;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.

The insurance afforded under Part IV applies separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

\*    \*    \*    \*    \*    \*

Limits of Liability:

000 per accident.

---

1. Section 303.030, RSMo Cum.Supp.1982, now requires limits of $25,000 per person and $50,-

(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

Two other applicable definitions were contained under Part I of the policy:

'named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

\* \* \* \* \* \*

'relative' means a relative of the named insured who is a resident of the same household;

The insurance company's claims are consistent with the language of the policy. *Cameron Mutual* held, however, that § 379.203 mandated uninsured motorist coverage and that the parties were not free to enter into a contract which had the effect of diminishing the coverage the statute required. There the plaintiff owned two cars, with uninsured motorist coverage being provided by a single policy. In this respect the case is identical to the one now before us. There, however, the named insured was suing for the death of his wife, who was driving one of the insured automobiles and suffered a fatal accident in a collision with an uninsured motorist. We held that the named insured could "stack" the coverage on both of the automobiles he owned, and that it would be contrary to the public policy indicated by the statute to permit the insurance company, by contract, to limit the coverage the law required.

The plaintiffs argue that there is no basis, under *Cameron Mutual,* for distinguishing among classes of insured, and that that case requires that any person who is an "insured" under a policy be able to stack the coverage on each vehicle which is covered by the policy.[2] The defendant insurance company argues that there is a distinction between the named insured and an "occupancy insured," that is, a person who is an insured simply by reason of occupying an insured automobile as driver or passenger. We had no occasion, in *Cameron Mutual,* to determine whether such a distinction should be recognized.

Similar questions have been decided by the courts of other states. Some state statutes differ from ours in not absolutely requiring uninsured motorist coverage but rather providing that the insured is to have the opportunity to refuse this coverage, in which case there would be a reduction in the premium. We do not believe that this difference is of great significance, and other courts appear to take the same position.[3] *Cameron Mutual* seems to be in line with the substantial weight of authority elsewhere.[4] There is a difference of opinion

---

2. We do not need to consider rights of an occupancy insured when the owner of the occupied vehicle owns other automobiles covered by separate policies, but perceive no reason why the rights would be greater than in the present situation, in which a single policy covered plural vehicles.

3. *Great Cent. Ins. Co. v. Edge,* 292 Ala. 613, 298 So.2d 607 (1974); *Werley v. United Services Auto. Ass'n.,* 498 P.2d 112 (Alaska 1972); *Travelers Ins. Co. v. Pac,* 337 So.2d 397 (Fla.App. 1976), *cert. denied,* 351 So.2d 407 (Fla.1977); *Estate of Calibuso v. Pacific Ins. Co.,* 62 Hawaii 424, 616 P.2d 1357 (1980); *Sturdy v. Allied*

*Mut. Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969); *Ohio Casualty Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky.1979); *Kemp v. Allstate Ins. Co.,* 183 Mont. 526, 601 P.2d 20 (1979). *See* Neighbor, "Pyramiding Uninsured Motorist Coverage— Has Iowa Joined the Majority?" 23 Drake L.Rev. 746 (1974); 16 Washburn L.J. 764 (1977).

4. *Moomaw v. State Farm Mut. Auto. Ins. Co.,* 379 F.Supp. 697 (S.D.W.Va.1974); *Great Cent. Ins. Co. v. Edge,* Note 3 *supra; Travelers Ins. Co. v. Pac,* Note 3 *supra; Estate of Calibuso v. Pacific Ins. Co.,* Note 3 *supra; Davis v. Hughes,* 229 Kan. 91, 622 P.2d 641 (1981); *Ohio Casual-*

among the courts of other states on the precise problem involved here, with authorities almost evenly divided between the position advanced by the insurance company and upheld by the trial court,[5] and the plaintiffs' position, upheld by the Court of Appeals.[6] We have examined the cases from other states but reach our conclusion on the basis of our own analysis of the public policy underlying the Missouri statutes and without particular reliance on decisions of other courts.

■ We conclude that the holding in *Cameron Mutual* need not and should not be extended to cover the situation involved in this case. *Cameron Mutual* implies from § 379.203 a limitation on the freedom of contract between an insurance company and its customers. The General Assembly, of course, is free to place restrictions on the power to contract. There is no explicit limitation in § 379.203, but in *Cameron Mutual* we were concerned about the requirement that a person owning two cars purchase uninsured coverage on each, and about a policy provision which limits the effect of the coverage purchased if the named insured happens to own more than one car. The coverage for the named insured is not dependent on presence in an insured vehicle at the time of an accident involving an uninsured motorist, but is also applicable if the named insured is a pedestrian, or is riding in someone else's automobile. The *Cameron Mutual* opinion perceived that a decision against stacking would deny the named insured the benefit of some of the coverage which was required and which had to be paid for. It does not

necessarily follow that an injured occupant who is not the owner must have recourse to all the uninsured motorist coverage the owner of the car in which he or she is present was required to pay for. The law does not even require that policies provide any uninsured motorist coverage for occupants. *Waltz v. Cameron Mutual Insurance Co.,* 526 S.W.2d 340 (Mo.App.1975).

■ The insurance company and the owner of the automobile should not be disabled from entering into a contract which confines the uninsured motorist coverage available to an occupancy insured to that covering the vehicle in which he or she is riding at the time of the accident. *Cameron Mutual* was based on public policy implied from the governing statute. We made an exception to the normal rule of freedom to contract because of this public policy. The implied restriction, however, should not go further than is strictly necessary to serve the statutory policy.

It is suggested, consistent with points advanced in *Cano,* that there is a distinction between Hines, who was driving Harper's car, and the Robinsons (apparently minors), who were simply passengers, in that Hines was an insured under Harper's liability coverage. This is not a sufficient reason for requiring Harper or his insurer to provide Hines with uninsured motorist coverage which Harper has purchased for another automobile. The provisions limiting liability are clear and this policy is free from the language other courts have found to be ambiguous [7] in providing that the insurance "apply separately to each insured," because the clause in the present case goes on to

ty *Ins. Co. v. Stanfield,* Note 3 *supra; Graham v. American Casualty Co.,* 261 La. 85, 259 So.2d 22 (1972); *Mountain West Farm Bureau v. Neal,* 169 Mont. 317, 547 P.2d 79 (1976); *Lopez v. Found. Reserve Ins. Co.,* 98 N.M. 166, 646 P.2d 1230 (1982).

5. *Moomaw v. State Farm Mutual Auto. Ins. Co.,* Note 4 *supra; Lambert v. Liberty Mut. Ins. Co.,* 331 So.2d 260 (Ala.1976); *Travelers Ins. Co. v. Pac,* Note 3 *supra; Sturdy v. Allied Mut. Ins. Co.,* Note 3 *supra; Ohio Casualty Ins. Co. v. Stanfield,* Note 3 *supra; Lopez v. Found. Reserve Ins. Co.,* Note 4 *supra; Cunningham v. Insurance Co. of N. Am.,* 213 Va. 72, 189 S.E.2d 832 (1972).

6. *Estate of Calibuso v. Pacific Ins. Co.,* Note 3 *supra; Barbin v. United States Fidelity & Guar. Co.,* 315 So.2d 754 (La.1975); *Holmes v. Reliance Ins. Co.,* 359 So.2d 1102 (La.App.1978); *Allstate Ins. Co. v. Anderson,* 87 Mich.App. 539, 274 N.W.2d 66 (1978); *Kemp v. Allstate Ins. Co.,* Note 3 *supra; Blocker v. Aetna Casualty and Sur. Co.,* 232 Pa.Super. 111, 332 A.2d 476 (1975).

7. *Great Cent. Ins. Co. v. Edge,* Note 3 *supra; Werley v. United Services Auto. Ass'n,* Note 3 *supra; Allstate Ins. Co. v. Morgan,* 59 Hawaii 44, 575 P.2d 477 (1978); *Allstate Ins. Co. v. Anderson,* Note 6 *supra; Lopez v. Found. Reserve Ins. Co.,* Note 4 *supra.*

state explicitly that it is not to be construed so as to increase the limits of the company's liability.

Our holding does not confer any unreasonable benefit on the insurance company, by reason of premiums paid for illusory coverage. If the holding were the other way the insured motorists would eventually bear the cost. We simply conclude that the courts should not limit freedom of contract under the circumstances shown by this record.

Our conclusion is consistent with *Linderer v. Royal Globe Insurance Co., supra,* and we generally approve the reasoning and result of that decision. It is argued that there is a distinction between "fleet" coverage, which was involved there, and the coverage of an individual who happens to own more than one car. Such a distinction is difficult to draw on a theoretical basis, especially when an implied limitation on freedom to contract is involved, and we see no reason for recognizing it.

The judgment of the circuit court is affirmed.

RENDLEN, C.J., HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., and MORGAN, Senior Judge, concur.

WELLIVER, J., not sitting.