**Scott ADAMS, Respondent,**

**v.**

**Keith JULIUS, Millers Mutual Insurance Assn., et al., Appellants.**

**Nos. 50611, 50612.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 7, 1986.

Motion for Rehearing and/or Transfer Denied Nov. 4, 1986.

Bruntrager, Bruntrager & Billings, Raymond A. Bruntrager, St. Louis, for respondent.

Emmett M. O'Brien, Leritz, Reinert & Duree, P.C., for appellant Millers Mut. Ins. Ass'n of Ill.

James M. Daly, Stephen G. Bell, St. Louis, for appellant State Security Ins. Co.

SIMON, Judge.

Defendants, Millers' Mutual Insurance Association of Illinois (Millers') and State Security Insurance Company (Security) each appeal from a judgment entered pursuant to jury verdicts in the Circuit Court of the City of St. Louis. Their appeals have been consolidated. The judgment awarded damages to plaintiff, Scott Adams, against the defendants, Keith Julius for $400,000, Millers for $50,000, and Security for $25,000.

Plaintiff's damages resulted from personal injuries he sustained when Julius' pickup truck collided with the motorcycle plaintiff was operating on Grand Avenue in the City of St. Louis. Plaintiff was the owner and operator of the motorcycle. He did not own an automobile. He was nineteen years old and lived with his parents, Daniel and Beatrice Adams, at the time of the collision. Millers' had issued an automobile insurance policy to plaintiff's mother, and Security had issued an automobile insurance policy to both his parents. In his action, plaintiff alleged that Julius was an uninsured motorist and that plaintiff was covered by the uninsured motorist provisions in the Millers' and Security policies.

The judgment awarded plaintiff the full amount of uninsured motorist coverage listed in each of the policies. Julius did not appear in person or by counsel, and he does not appeal.

On appeal, Millers' claims the trial court erred in overruling its motions for a directed verdict and for judgment notwithstanding the verdict (JNOV) because plaintiff was excluded from the uninsured motorist coverage of Millers' policy. In its appeal, Security claims that the trial court erred: (1) in failing to render judgment in favor of Security since its policy afforded no coverage to plaintiff, and (2) in permitting plaintiff's counsel to state to the jury, while referring to a Missouri motor vehicle accident report, that Julius was involved in the accident and to use the report as evidence that Julius was so involved. The dispositive issue of each appeal is whether plaintiff was an "insured" under the uninsured motorist coverage of the Millers' and Security policies. We reverse as to both defendants.

In Millers' sole point on appeal, it argues that its motion for JNOV should have been sustained because plaintiff was excluded, under its policy, from uninsured motorist coverage in that plaintiff, at the time of the accident, was occupying a highway vehicle (other than an insured automobile) owned by him. Millers' further contends that the exclusion does not violate § 379.203 RSMo Supp.1984 (unless otherwise noted all other statutory citations are to RSMo Supp.1984), or public policy in that plaintiff was not a person otherwise insured under the liability coverage of the policy.

A motion for judgment notwithstanding the verdict presents the same issue as a motion for directed verdict at the close of all of the evidence, i.e., did plaintiff make a submissible case. *Wells v. Orthwein*, 670 S.W.2d 529, 532 (Mo.App.1984). Ordinarily, to recover under an uninsured motorist policy, the party seeking recovery must prove: (1) that he or she was covered by the policy; (2) that the other motorist was uninsured; (3) that the other motorist is legally liable; and (4) the amount of dam-

ages. *See Oates v. Safeco Insurance Company of America*, 583 S.W.2d 713.

At the outset, we note the governing rules of construction. An insurance policy is a contract designated to furnish protection. It will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. If the policy terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down or avoiding liability on the coverage made in the policy are construed most strongly against the insurer, the drafter of the policy provisions. However, where there is no ambiguity, there is no room for construction. Unequivocal language in an insurance contract is to be given its plain meaning. *State Farm Mutual Automobile Insurance Company v. Ward*, 340 S.W.2d 635, 639 (Mo.1960).

Furthermore, we note that § 379.203 provides in pertinent part:

379.203. *Automobile liability policy, required provisions—uninsured motorist coverage required—recovery against tortfeasor, how limited.*

1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.-030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Section 379.203 becomes a part of every policy of insurance to which it is applicable as if it were included in full in the policy itself. *Oberkramer v. Reliance Insurance Company*, 650 S.W.2d 300, 302 (Mo.App. 1983). Exclusions of uninsured motorist coverage contrary to the public policy of this statute are invalid. *Shepherd v. American States Insurance Company*, 671 S.W.2d 777, 780 (Mo. banc 1984). The phrase "persons insured thereunder" in the statute relates back to persons insured under the liability provisions of the applicable insurance policy. The underlying public policy which prompted enactment of § 379.-203 was to give persons insured by such coverage, when injured by an uninsured motorist, protection parallel to that which they would have had if they had been injured in an accident caused by a motor vehicle covered by the minimum liability requirements of the financial responsibility law. *Otto v. Farmers Ins. Co.*, 558 S.W.2d 713, 717 (Mo.App.1977). Uninsured motorist protection inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist, rather than to a particular vehicle. *Id.* at 718. Further, an insurer may limit the coverage afforded an insured under a policy only so long as the exclusion does not violate § 379.203 or the public policy behind it. *Id.* at 717. While § 379.203 will be applied liberally to invalidate attempts by insurers to reduce benefits under applicable coverage, it cannot create coverage. *Harrison v. MFA Mutual Insurance Company*, 607 S.W.2d 137, 147 (Mo. banc 1980). In light of the foregoing, we review the points raised on appeal.

Consistent with the evidence, Julius is an uninsured motorist, i.e., he was not insured and he was operating an uninsured motor vehicle. The automobile insurance policy issued by Millers to plaintiff's mother, Beatrice T. Adams, was introduced by stipulation as the policy that was in effect at the time of plaintiff's injury. The cover page of the policy was a "Change of Declarations Endorsement." Item one of the declarations listed the "named insured" as Beatrice T. Adams. Item three contained the "coverages and description of owned automobile," a "73 Merc." The policy provided coverage for liability in the amount of $100,000, medical expenses of $3,000, and uninsured motorists protection of $50,000. Additional pertinent provisions of the Millers policy are:

POLICY PROVISIONS—PART A

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the insured named in the declarations as follows:

PART I—PROTECTION AGAINST LIABILITY, MEDICAL EXPENSE AND UNINSURED MOTORISTS AND ACCIDENTAL DEATH BENEFIT

LIABILITY COVERAGE: The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile....

MEDICAL EXPENSE COVERAGE: The company will pay all reasonable medical expense incurred within one year from the date of accident for bodily injury caused by accident and sustained by

(1) the named insured or a relative

(a) while occupying the owned automobile,

(b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or

(c) through being struck by a highway vehicle; ...

PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE: The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; ...

PERSONS INSURED: Under the Liability and Medical Expense Coverages, the following are insureds:

(a) with respect to an owned automobile,

(1) the named insured,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) a relative, but only with respect to a private passenger automobile or utility trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above....

Under the Uninsured Motorists Coverage, the following are insureds:

(a) the named insured and any relative,

(b) any other person while occupying an insured automobile,

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above....

DEFINITIONS: When used with respect to Part I:

"AUTOMOBILE" means a four wheel land motor vehicle designed for use principally upon public roads; ...

"HIGHWAY VEHICLE" means a land motor vehicle or trailer other than (1) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (2) a vehicle operated on rails or crawler-

treads, or (3) a vehicle while located for use as a residence or premises;

"INSURED" means a person or organization described under "Persons Insured"; ...

"NAMED INSURED" means the individual or husband and wife named in Item 1 of the declarations, but if only one individual is named the term "named insured" also includes his spouse, if a resident of the same household;

"NON–OWNED AUTOMOBILE" means an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household, and includes while used therewith, a home trailer not owned by the named insured or a utility trailer, but "non-owned automobile" does not include a temporary substitute automobile;

"OCCUPYING" means in or upon, entering into or alighting from;

"OWNED AUTOMOBILE" means

(a) a private passenger or utility automobile or home trailer described in this policy for which a specific premium charge indicates that coverage is afforded,

(b) a private passenger or utility automobile or home trailer ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) The company insures all private passenger and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days thereafter of his election to make this and no other policy issued by the company applicable to such automobile or trailer,

(c) a temporary substitute automobile, and includes, while used with any automobile described above, a home trailer not owned by the named insured or a utility trailer;

"PRIVATE PASSENGER AUTOMOBILE" means a private passenger or station wagon type automobile; ...

"RELATIVE" means a person related to the named insured by blood, marriage or adoption who is a resident of the same household, provided neither such relative nor his spouse owns a private passenger automobile;

"TEMPORARY SUBSTITUTE AUTOMOBILE" means an automobile now owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction;

"USE" of an automobile includes the loading and unloading thereof;

"UTILITY AUTOMOBILE" means an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming;

"UTILITY TRAILER" means

(1) a trailer designed for use with a private passenger automobile, if not a home, office, store, display or passenger trailer, or

(2) a farm wagon or farm implement while used with a private passenger or utility automobile; ...

As used with respect to Uninsured Motorists Coverage:

"INSURED AUTOMOBILE" means:

(a) an owned automobile while being used by or with the permission of the named insured, or

(b) a non-owned automobile while being operated by the named insured with the permission of the owner;

but the term "insured automobile" shall not include any automobile while used as a public or livery conveyance; ...

EXCLUSIONS: This policy does not apply: ...

Under the Uninsured Motorists Coverage, (q) to bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named insured or by any person resident in the same household who is related to the named insured by blood, marriage or adoption, or through being struck by such a vehicle; ...

Attached to the policy was an endorsement, signed by plaintiff's mother, stating:

In consideration of the continuation of this policy in force by the Company, it is hereby agreed that the Company shall not be liable for loss, damage, and/or liability caused while the automobile described in the policy or any other automobile to which the terms of the policy are extended is being driven or operated by the following named person:

SCOTT A. ADAMS

In all other respects, this policy remains unchanged.

We note that the section of the policy dealing with "PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE" does include plaintiff as an "insured" because he is a "relative" of the "named insured," his mother. However, exclusion "q" expressly states that uninsured motorists coverage does not apply to bodily injury to an insured while occupying a "highway vehicle" (other than an insured automobile) owned by the named insured or by any person in the same household related to the named insured. Exclusion "q" applies to plaintiff. He is a relative (son) of the named insured and resides in the same household and he was, at the time of his injury, occupying (operating) his motorcycle, a "highway vehicle," which he owned and was not insured under the policy.

■ Plaintiff argues that the policy defines "highway vehicle" as a "land motor vehicle," but fails to define "land motor vehicle." It is further contended that the term "land motor vehicle" is very broad and ambiguous, and should be construed favorably to plaintiff, and therefore should include motorcycles. Thus, exclusion "q" should not apply. We disagree. The term "land motor vehicle," although broad, is not ambiguous. Plaintiff's motorcycle is clearly a "land motor vehicle," as set forth in the policy's definition of "highway vehicle." Thus, plaintiff was excluded as an insured under the uninsured motorist provision of Millers' policy.

We now turn to the question of whether this exclusion violates the mandate of § 379.203. In so doing, we must inquire whether plaintiff is an insured under liability coverage of the policy because "[t]here is no violation of the statute unless a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes." *Famuliner v. Farmers Ins. Co., Inc.*, 619 S.W.2d 894, 897 (Mo.App.1981).

Plaintiff argues that he has liability coverage because said coverage is extended under the policy to "the named insured or relative ... through being struck by a highway vehicle." Plaintiff, however, is quoting from the "MEDICAL EXPENSE COVERAGE" provision which is clearly separate from the provision for "LIABILITY COVERAGE."

Millers' argues, based upon the provisions of the policy, plaintiff was not an insured under liability coverage for two reasons. First, liability coverage is only afforded for collisions involving automobiles, which are defined in the policy as four wheel land motor vehicles. Thus, Millers' maintains that plaintiff does not qualify as an insured under liability coverage because he was operating a motorcycle, a two wheel motor vehicle. This is true under the facts of the instant case.

Liability coverage is limited under the policy to damage arising out of the ownership, maintenance or use of an "owned automobile or a "non-owned automobile." Liability coverage is not extended to motorcycles. It does not follow, however, that plaintiff never qualified as an insured for liability coverage. Secondly, Millers' argues that the restrictive endorsement to

the policy, excluding plaintiff, effectively removed him as an insured from the liability coverage under the policy. After a careful examination of the policy, we disagree.

Initially, we note that the endorsement to the policy, excluding plaintiff from liability coverage, effectively removed him as a "person insured" when he is *driving* or *operating* the "automobile" described in the policy ('73 Merc) or "any other automobile" to which the policy applies. Under the liability coverage provision, however, an insured is covered for damages "arising out of the ownership, maintenance or *use* of an owned automobile or a non-owned automobile." (emphasis ours). The policy defines use of an automobile as including "the loading or unloading thereof." Use is not limited to driving or operating an automobile.

Under liability coverage, a person is an insured with respect to an owned automobile if he is *"using* such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his *other actual use* thereof is within the scope of such permission." (emphasis ours). Under liability coverage, a relative of the named insured is an insured with respect to a non-owned automobile, "provided his actual operation (if he is not operating) the *other actual use* thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission." (emphasis ours).

▉ From the foregoing provisions it is clear that plaintiff had liability coverage, as an insured under the policy, in certain, limited circumstances notwithstanding the exclusionary endorsement. The plain language of the policy provides plaintiff with liability coverage for the *use* of owned and non-owned automobiles. While the endorsement removed plaintiff from liability coverage when he *drove* or *operated* an automobile, it did not exclude him from coverage if he *used* the automobile in another way. By the policy's definition, "use" includes more than merely operating or driving. It also includes loading or un-

loading an automobile. Thus, plaintiff had liability coverage in those situations in which he was using an automobile (covered by the insurance policy), but was neither driving nor operating the same.

Hence, the dispositive issue is whether a person, who is not a "named insured," but who has limited liability coverage under an automobile insurance policy, must be afforded uninsured motorist coverage while operating a motorcycle that is not covered by the policy. Missouri cases indicate that § 379.203 does not require that uninsured motorist coverage be provided in all situations to persons who qualify as insureds for liability coverage in only limited circumstances.

In *Hines v. Government Employees Insurance Co.*, 656 S.W.2d 262 (Mo. banc 1983), the court distinguished among classes of "insureds" able to qualify for uninsured motorist protection. In *Hines*, Warren Harper owned two automobiles, both of which were insured by the defendant insurance company under a single policy. The policy contained uninsured motorist coverage for both cars, with the minimum coverage of $10,000 per person and $20,000 per accident. Under the uninsured motorist coverage section of the policy, an "insured" was defined as including any person while occupying an insured automobile. Harper gave Hines permission to use one of his cars. Hines was driving this car with passengers when another vehicle, driven by an uninsured motorist, negligently collided with it. Hines and his passengers brought suit against the insurance company alleging that a total of $40,000 of uninsured motorist coverage was available to them by reason of Harper's coverage for his two automobiles. The insurance company argued that policy language limiting the amount of uninsured coverage to $20,000 for "all damages ... because of bodily injury sustained by two or more persons as the result of any one accident," precluded "stacking" the uninsured protection for both cars upon each other. The court upheld this limitation and found the three

occupants were limited to a total of $20,000 of uninsured coverage.

The court distinguished between "named insureds" on the policy and "occupancy insureds," persons who are insured simply by reason of occupying an insured automobile as a driver or passenger. A "named insured" who suffers damages in an accident with an uninsured motorist is entitled to "stack" all policies under which he is insured and collect the benefits under each. *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976). Policy restrictions designed to limit uninsured motorist coverage for a "named insured" in this respect are unenforceable because they are against public policy. *Id.* In *Hines,* however, such a restriction as to "occupancy insureds" was upheld on the grounds of freedom of contract. Our Supreme Court stated: "The insurance company and the owner of the automobile should not be disabled from entering a contract which confines the uninsured motorist coverage to an occupancy insured to that covering the vehicle in which he or she is riding at the time of the accident." 656 S.W.2d at 265. The court also determined that even though Hines was an insured under Harper's liability coverage, this was not a sufficient reason for requiring Harper or his insurer to provide Hines with uninsured coverage for the other automobile insured by the policy. *Id.* at 265–66.

In *Cano v. Travelers Insurance Co.,* 656 S.W.2d 266 (Mo. banc 1983), a similar issue was raised. The plaintiff therein was only an "occupancy insured" as to liability coverage under his employer's automobile insurance policy. The employer, a car dealer, carried uninsured motorist protection on any automobile it owned and any highway vehicle to which its dealer plates were attached. The policy limited uninsured protection to $10,000 for "each accident." The plaintiff, while driving an automobile owned by his employer, was involved in a collision with an uninsured motorist. He obtained a default judgment against the uninsured driver for $50,000 for his injuries. The plaintiff argued that there were at least five uninsured motorist coverages

that could be "stacked" in order to satisfy his judgment. The defendant insurance company maintained that, as per the limitation in the policy, only one $10,000 coverage was available. Our Supreme Court concluded, based on *Hines,* that the limitation on uninsured coverage was valid even though the plaintiff was an insured under liability coverage. The court reasoned that because the plaintiff was only an "occupancy insured" under the liability portions of the policy, and not a "named insured," he was not entitled to uninsured motorist coverage in excess of the limits on the car he occupied at the time of the accident.

In *Famuliner v. Farmers Insurance Company,* 619 S.W.2d 894 (Mo.App.1981), Famuliner was injured in a collision with an uninsured motorist while operating a motorcycle owned by him. Famuliner resided with his mother and father. His parents had automobile insurance for their own automobiles which extended coverage under "all features of the liability insured agreements," including uninsured motorist coverage, to relatives residing in the same household as the named insureds *provided* the relative did not own an automobile. In addition to his motorcycle, Famuliner also owned his own automobile. Notwithstanding the limitation, however, the court noted that Famuliner had liability coverage under the permissive use clause of his parents' policy while driving either of his parents' automobiles. *Id.* at 897 n. 2. Hence, Famuliner had potential liability coverage in that limited circumstances, yet the court found the exclusion from uninsured coverage to be valid.

■ In the instant case, plaintiff was possibly covered in the limited circumstances under the liability coverage in Millers' policy. Plaintiff was not covered, for liability purposes, while riding his motorcycle. Furthermore, plaintiff's mother (the named insured) and Millers restricted uninsured motorist coverage to certain vehicles. Plaintiff was not an "occupancy insured" (as described in *Hines*) under Millers' policy while operating his motorcycle. Exclu-

sion (q) clearly precluded uninsured motorist coverage for plaintiff while operating his motorcycle. While this exclusion was invalid as to the "named insured," because of public policy expressed in § 379.203, we see no public policy reason why the exclusion should not apply as to plaintiff who was not a "named insured." Thus, plaintiff failed to make a submissible case against Millers. Accordingly, the judgment is reversed.

In Security's appeal, it alleges in its first point that, "The trial court erred in failing to render judgment herein in favor of appellant, State Security Insurance Company, on the claim of plaintiff, for the reason that the policy of automobile insurance of plaintiff's parents with Security affords no coverage to plaintiff." Plaintiff responds that this point should be struck for failure to state what ruling of the court was erroneous in violation of Rule 84.04(d). Since we are able to glean from Security's brief the point raised, we will review the trial court's failure to grant Security's motion for judgment notwithstanding the verdict, and Security's policy of insurance, in the same manner as we reviewed Millers' appeal.

Security's policy was introduced by stipulation as a policy in effect on the date of plaintiff's injury. Item one on the declarations page is entitled "Name of Insured," and it lists Daniel L. and Beatrice Adams (plaintiff's parents) thereunder. Items four and five state that the only "private passenger" automobile owned by the named insured on the effective date of the policy was a 1973 Mercury Montego. The coverages are stated in item three: (A) $25,000 each person, and $50,000 each occurrence for bodily injury liability; (B) $10,000 each occurrence for property damage liability; and (J) $25,000 each person and $50,000 each accident for family protection. Other relevant provisions of Security's policy are set out below:

### PART I—LIABILITY

*Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, ...

PERSONS INSURED. The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission;

(b) With respect to a non-owned automobile,

(1) the named insured,

(2) a relative, but only with respect to a private passenger automobile or utility trailer, provided the person using such automobile has received the permission of its owner and the use is within the scope of such permission;

(c) Any other person or organization legally responsible for the use of

(1) an owned automobile, or

(2) a non-owned automobile, if such automobile is not owned or hired by such person or organization, provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile. ...

DEFINITIONS. Under Part I:

"NAMED INSURED" means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

"INSURED" means a person or organization described under "Persons Insured";

"RELATIVE" means a relative of the named insured who is a resident of the same household;

"OWNED AUTOMOBILE" (a) means a private passenger, farm or utility automobile or trailer owned by the named insured and described in this policy, and includes a temporary substitute automobile (b) a private passenger, farm or utility automobile ownership of which is acquired by the named insured provided (1) it replaces an owned automobile as defined in (a) above, or (2) the company insures all private passenger, farm and utility automobiles owned by the insured on the date of such acquisition and the named insured notifies the company in writing within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or (c) a temporary substitute automobile;

"NON–OWNED AUTOMOBILE" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

## PART II—EXPENSES FOR MEDICAL SERVICES ...

## PART III—PHYSICAL DAMAGE ...

## PART IV—FAMILY PROTECTION COVERAGE

*Coverage J—Family Protection (Damages for Bodily Injury).* To pay all such sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; ...

DEFINITIONS. The definitions under Part I, except the definition of "insured," apply to Part IV, and Under Part IV:

"INSURED" means:

(a) the named insured and any relative;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.

*EXCLUSIONS* This policy does not apply under Part IV:

(a) to bodily injury to an insured while occupying an automobile or any motor vehicle (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile or motor vehicle;
   . . .

■ Similar to Millers' policy of insurance, Part IV of Security's policy initially grants uninsured motorist coverage to plaintiff because he comes under Part IV's definition of an "insured" since he is a "relative" of the "named insured," plaintiff's parents. Relative is defined as a "relative of the named insured who is a resident of the same household." Plaintiff resided in the same household with both his parents, so he comes under this definition. However, exclusion (a) precludes coverage for an insured's injuries received while occupying a motor vehicle (other than an "insured automobile") owned by a relative of the named insured. Plaintiff does not argue that his motorcycle is an "insured automobile." It clearly is not. Rather, he argues the exclusion does not apply because there is no definition of "motor vehicle," this term is ambiguous, and thus motorcycle is not a motor vehicle. We disagree. As stated in relation to Millers' appeal, a motorcycle is clearly a motor vehicle. *See* J. Appleman, 8C Insurance Law and Practice § 5078.55, at 209 (1981).

The liability section of Security's policy includes plaintiff as an insured with respect to an "owned automobile" and a "non-

owned" automobile. There was no exclusion endorsement attached to Security's policy. In this respect, Security's appeal is different than Millers' appeal. However, plaintiff was not covered under Security's policy for liability purposes when he was operating his motorcycle. Although there is no definition of "automobile" that clearly excludes motorcycles, the motorcycle was obviously not an "owned automobile," as defined by the policy, because it was owned solely by plaintiff and not by the "named insured." Similarly, it did not come under the definition of a "non-owned automobile" because it was owned and used regularly by plaintiff, a relative of the "named insured."

Even though plaintiff was afforded liability coverage under more circumstances in Security's policy than Millers' policy, plaintiff was properly excluded from uninsured motorist coverage under Security's policy in the circumstances of this case. The public policy expressed by § 379.203 was not violated, since plaintiff was not a person who otherwise qualified as an insured for liability purposes. Plaintiff did not have liability coverage or uninsured motorist coverage while operating his motorcycle, nor was he a named insured, under Security's policy. Although exclusion (a) to the uninsured motorist coverage would be invalid if it limited coverage as to the named insured, it was not invalid as to plaintiff. Therefore, plaintiff failed to make a submissible case of uninsured motorist coverage under Security's policy of insurance, and the judgment against Security in the amount of $25,000 must be reversed. Since we reverse Security's first point, we do not address its second point on appeal.

The judgments, respecting both Millers' and Security's appeals, are reversed.

GARY M. GAERTNER, J. concurs.

SATZ, P.J., concurs in result.