AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN,
Appellee,

v.

Randy FORSYTHE; Michael McCormick; Wayne Scott Miller;

Shirley Ann Nichols; Peggy Page; Dennis C. Smith; Jamie Lynn Smith, By and Through her Guardian and Conservator Dennis C. Smith; Leonard Freese, Appellees,

State Farm Insurance; Cameron Mutual Insurance Company, Appellants.

No. 89-2497.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1990.

Decided Oct. 5, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 11, 1990.

David C. Ruyle, Neosho, Mo., for appellants.

Gary R. Cunningham, Springfield, Mo., for appellee American Standard Ins. Co. of Wisconsin.

Glenn R. Gulick, Jr., Joplin, Mo., for appellees Nichols, Page, Smith and Smith.

Before ARNOLD, WOLLMAN, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Cameron Mutual Insurance Company (Cameron) appeals from a final order entered in the District Court[1] for the Western District of Missouri, declaring judgment in favor of the appellees, American Standard Insurance Company of Wisconsin (American Standard), Jamie Lynn Smith, Dennis Smith, Peggy Page, Shirley Ann Nichols, and Leonard Freese. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

This lawsuit arises from an automobile collision in Missouri on September 25, 1987. Randy Forsythe was driving a vehicle owned by Wayne Scott Miller. It collided with a vehicle occupied by Greg Smith and his exwife, Bonnie Smith. The Smiths were killed in the accident. They were survived by their two-year-old daughter, Jamie Lynn Smith. Bonnie Smith was also survived by her parents, Leonard Freese

---

* The Honorable WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

and Shirley Ann Nichols, and her paternal grandparents, Robert Freese and Mary Ellen Freese. Greg Smith was survived by his parents, Dennis Smith and Peggy Page.

American Standard brought this declaratory judgment action seeking a determination that there was no liability coverage under its policy. Cameron filed a cross claim against Leonard Freese, Shirley Nichols, and Jamie Lynn Smith seeking a declaration that no uninsured motorist coverage was available under its policy with Robert and Mary Ellen Freese.

The trial court declared that (1) American Standard's policy was void *ab initio;* (2) Bonnie Smith was an "insured" under the policy because she was a resident of the Robert and Mary Ellen Freese household; and (3) stacking is available under the Freese policy. Declaratory judgment was entered stating that coverage existed under the Cameron policy in the amount of $150,-000. Cameron now appeals all aspects of the district court's judgment.

## II. DISCUSSION

### A. *Validity of the American Family Policy*

The district court held that the American Standard policy issued for Miller's automobile was void *ab initio* because of the misrepresentations made by Miller at the time he applied for the policy. Cameron challenges the court's decision, arguing that American Standard is estopped from asserting such a defense.

In 1981, Wayne Scott Miller (Scott Miller) was adjudged incompetent by a Missouri state court. His brother, Melvin Miller, was appointed to be Scott's guardian. The state court order is still in effect.

Scott Miller pleaded guilty to several counts of deviate sexual assault against teenage boys in 1983. Randy Forsythe, who was driving the car involved in the accident, was one of these youths.

On July 6, 1987, accompanied by his guardian, Scott Miller obtained insurance for a 1972 Oldsmobile Cutlass from American Standard. He stated to the insurance agent that he had no mental or physical impairments and that he had never been arrested for anything other than a motor vehicle violation.

In early September 1987, Scott Miller purchased a 1987 Chevrolet Camaro. With his guardian's permission, he secured insurance for the Camaro from the same insurance agent that processed his Oldsmobile insurance. Scott Miller stated that nothing had changed from the last application, and paid the premium with a check imprinted "Melvin D. Miller, GDN." The signature on the check read "Melvin D. Miller."

On September 24, 1987, a small group of people met at Scott Miller's house where they drank a substantial quantity of alcohol and smoked marijuana. Shortly before the accident, Forsythe asked Miller to drive him home. Forsythe testified that Miller stated he was too tired and told Forsythe to take the Camaro and return it in the morning. Forsythe left with the car, and the collision occurred.

A misrepresentation on an application for insurance may void an insurance policy if the statement is both false and material. *Galvan v. Cameron Mutual Insurance,* 733 S.W.2d 771, 773 (Mo.Ct.App. 1987). The test of materiality is whether the answer, if truthful, might reasonably influence an insurer to reject a risk or charge a higher premium. *Haynes v. Missouri Property Insurance Placement Facility,* 641 S.W.2d 497, 499 (Mo.Ct.App. 1982). There is no dispute that Miller's misrepresentations made to the American Standard agent, denying a criminal record and physical or mental impairments, were material and sufficient to void the policy.

Cameron asserts that American Standard knew or should have known that the misrepresentation defense was available before paying Miller for property damage done to the car. Before issuing a check to Miller and the lienholder, American Standard had a copy of Miller's driving record which provided at least constructive notice of his driving violations. If American Standard knew there were misrepresentations regarding the driving record, appellant

urges this court to find that American Standard should have known that there were or might have been other material misrepresentations, such as those relating to his felony convictions and incompetence. Since a check was issued after being put on inquiry notice, Cameron argues that American Standard is now estopped from asserting a misrepresentation defense.[2]

■ An insurer cannot be prevented from asserting a defense if it has a legitimate reason why it did not know and could not have known of a defense. *State ex rel. Shelter Mutual Insurance Company v. Crouch,* 714 S.W.2d 827, 829 (Mo.App. 1986). In the present case, the district court found that the existence of Miller's driving record was not sufficient to put a prudent person on notice that material misrepresentations existed on the policy application, nor was there anything about the driving record itself that required American Standard to conduct an investigation beyond that which concerned the accident itself. *See Prudential Property and Casualty Insurance Company, Inc. v. Cole,* 586 S.W.2d 433, 436 (Mo.Ct.App.1979) (when application complete on its face, no duty to make further inquiry); *see also Fox v. Ferguson,* 765 S.W.2d 689, 691 (Mo.Ct. App.1989) (independent investigation does not preclude right to rely on prior misrepresentations where parties on unequal ground). The trial court also found that the initials "GDN" printed after Melvin Miller's name were not adequate to put American Standard on notice regarding Miller's guardianship.

The district court held that American Standard was not estopped from relying on a misrepresentation defense since it was not aware of the defense at the time it made payment to Miller on the policy. It concluded that because the misrepresentations regarding Miller's criminal record and guardianship were material, the policy was void *ab initio.*

A district court's ruling will be overturned only if the determination is clearly erroneous. *Inwood Laboratories Inc. v. Ives Laboratories Inc.,* 456 U.S. 844, 857–58, 102 S.Ct. 2182, 2190–91, 72 L.Ed.2d 606 (1982). The district court's findings of fact were not clearly erroneous, and its application of the relevant law was correct.

## B. *Uninsured Coverage*

Since Miller's policy is void, the issue of uninsured motorist coverage must be addressed. Cameron asserts that the district court erred both in allowing uninsured motorist coverage to apply and in calculating the amount of that coverage.

### 1. Resident of Household

Cameron is the issuer of a policy held by Robert and Mary Ellen Freese. That policy provides uninsured motorist coverage for any resident of the insureds' household as well as the named insureds. Bonnie Smith was the granddaughter of the Freeses. Jamie Lynn Smith is their great-granddaughter. At the time of the accident, Jamie Lynn Smith was living with the Freeses, and Bonnie Smith was attending an eight-week training program in St. Louis.

■ Whether a person is a resident of any particular household depends on the facts of each case. *Cobb v. State Security Insurance Company,* 576 S.W.2d 726, 738 (Mo.1979) (en banc) (definition of household depends on facts of each case); *Watt by Watt v. Mittelstadt,* 690 S.W.2d 807, 815–16 (Mo.Ct.App.1985) (consider whether individual is "insured" under each circumstance). However, two general guidelines have emerged: first, a court should consider whether the living arrangement is permanent or temporary, and second, whether

**2.** There is discussion in the briefs and the district court's Memorandum Opinion and Order regarding the appropriate use of the terms "waiver" and "estoppel." In *Brown v. State Farm Mutual Automobile Insurance Company,* 776 S.W.2d 384 (Mo.1989) (en banc), the Missouri Supreme Court states that " '[e]stoppel, with some element of unfairness, lack of notice, or other detriment to the insured, rather than voluntary waiver without such element, is the preferred theory when the insurer elects a policy defense.' " *Id.* at 388, quoting *Macalco Inc. v. Gulf Insurance Company,* 550 S.W.2d 883, 891–92 (Mo.Ct.App.1977). Therefore, we will treat appellant's argument as a theory of estoppel rather than waiver.

the household acts as a unified family unit. *American Family Mutual Insurance v. Brown,* 657 S.W.2d 273, 275 (Mo.Ct.App. 1983).

■ Appellant argues that the district court erred in finding that Bonnie Smith was a resident of the Freese household. We disagree. Bonnie Smith was at school at the time of the accident. While she hoped to establish her own household after she finished school, she intended to return to the Freese home until she could support herself and her child. She kept her personal belongings with her grandparents, her two-year-old daughter was living there, and she listed the Freese address as her own when completing applications and forms. Essentially, Bonnie Smith considered the Freese home as her own. Under the circumstances of this case, Bonnie Smith's plan to set up her own household and to leave her grandparents after she finished school does not make her a "temporary" resident, nor does the fact that she was at the time of her death living away from home mean that the household was not acting as a family unit so as to disqualify her as an "insured" under the policy.

There is sufficient evidence in this record to support the district court's conclusion that Bonnie Smith was a resident of the Freese household, and thus, its determination will not be disturbed by this court.

### 2. Amount of Coverage

Appellant argues that even if the uninsured motorist provision of its policy is applicable, the district court erred in determining the amounts due under the policy. Specifically, Cameron asserts that the coverage for the three vehicles under the policy should not be stacked and that the district court's determination of the amount owing under each policy was incorrect.

### a. *Stacking Coverage Under One Policy*

■ The Freese policy issued by Cameron covers three vehicles, with maximum uninsured coverage of $25,000 per person or $50,000 per occurrence. While appellees seek to stack the vehicle coverages, Cameron contends that an antistacking provision in the policy prohibits such action.

■ Missouri law requires all persons carrying liability insurance to also insure against damages arising from the negligence of uninsured motorists. *See* Mo. Rev.Stat. § 379.203. The public policy expressed in the statute bans provisions which seek to limit the amount of uninsured coverage. *Cameron Mutual Insurance Company v. Madden,* 533 S.W.2d 538, 544-45 (Mo.1976) (en banc).

Despite *Madden,* a number of Missouri cases have upheld antistacking provisions in an insurance policy. *See e.g. Cano v. Travelers Insurance Company,* 656 S.W.2d 266, 269 (Mo.1983) (en banc) (occupancy coverage); *Hines v. Government Employees Insurance Company,* 656 S.W.2d 262, 265 (Mo.1983) (en banc) (same); *Adams v. Julius,* 719 S.W.2d 94, 102 (Mo. Ct.App.1986) (limited circumstances liability); *Famuliner v. Farm Insurance Company Inc.,* 619 S.W.2d 894, 899 (Mo.Ct.App. 1981) (ownership of vehicle exclusion). Cameron relies on these cases to argue that Missouri courts will not prohibit an antistacking provision as applied to insureds other than the named insured.

Later cases reveal, however, that such a distinction cannot be made. *See e.g. Lightner v. Farmers Insurance Company,* 789 S.W.2d 487, 490 (Mo.1990) (en banc) (insured's son, who is not otherwise excluded, may stack named insured's policy); *Husch by Husch v. Nationwide Mutual Fire Insurance Company,* 772 S.W.2d 692, 694 (Mo.Ct.App.1989) (minor child of named insured allowed to stack policies). Missouri courts have held that the real inquiry when determining whether public policy would void an antistacking provision is the reasonable expectations of the insured. *Husch by Husch v. Nationwide Mutual Fire Insurance Company,* 772 S.W.2d at 694.

In the present case, the trial court found that it was reasonable for Robert and Mary Ellen Freese to expect coverage for their granddaughter, Bonnie. First, Bonnie lived in their household throughout her life.

Additionally, her daughter, Jamie Lynn, was living with them at the time of Bonnie's death. Furthermore, the Freeses let Bonnie use one of their vehicles while she was at school in St. Louis. From these circumstances, the district court found that the antistacking provision in the policy was void because Robert and Mary Ellen Freese would have expected Bonnie to be entitled to the same coverage that applied to them.

We give great deference to the district court's interpretation of local laws. *Hysell v. Iowa Public Service Company,* 534 F.2d 775, 780 (8th Cir.1976). The district court properly relied on *Husch* to reach its decision that Bonnie Smith could stack the coverage of each vehicle insured under the policy.

b. *Amount Owing Under the Policy*

We have affirmed the district court's ruling that Bonnie Smith was an "insured" under the Freese policy, and that her estate may stack the three vehicle coverages under the policy. It is not disputed that Jamie Lynn Smith was also an "insured," and for the same reasons that apply to Bonnie Smith's estate, Jamie Lynn Smith would also be able to stack the policies. The final issue for determination is whether the district court erred in declaring that the per occurrence limits, or $50,000, for each vehicle apply to this case as opposed to the per person limits, or $25,000, for each vehicle.

Unfortunately, the district court did not specifically address this issue in its Memorandum Opinion and Order. Its Order Nunc Pro Tunc only orders that "judgment be entered against Cameron Mutual Insurance on its cross claim and that the wrongful death claimants are entitled to $150,000 in coverage on the Cameron policy."

█ In this case, both Jamie Lynn Smith and the estate of Bonnie Smith were covered under the policy and suffered damages caused by an uninsured motorist; Bonnie Smith lost her life, and Jamie Lynn Smith lost the benefit and services of her parents. Cameron argues, however, that the phrase "bodily injuries" as used in the policy precludes Jamie Lynn Smith from bringing a consortium claim under the policy.

The Cameron policy at Subsection II of Section H (Coverage—Uninsured Motorist Coverage) states that the insurer will "[p]ay all sums which the insured or his [or her] legal representative shall be legally entitled to recover as damages from the owner or operator of any uninsured automobile because of bodily injuries sustained by the insured * * *."

In *Cano v. Travelers Insurance Company,* 656 S.W.2d 266 (Mo.1983) (en banc), the Missouri Supreme Court analyzed identical language and held that the phrase "damages from bodily injury sustained by the insured" was ambiguous. Based on *Bellamy v. Pacific Mutual Life Insurance Company,* 651 S.W.2d 490 (Mo.1983) (en banc) (ambiguity to be construed against insurer), the court ruled that "bodily injury" included consortium loss. The insurance policy in *Cano* limited liability to $10,-000 for "each person." Since there were two separate and distinct claims made under the policy, the court found that each claim was entitled to a separate limit. *Cano* at 271.

The language in Cameron's policy is identical to that portion of the policy in *Cano* which was found to be ambiguous. Thus, *Cano* also applies here, and Jamie Lynn Smith is entitled to bring a claim for consortium under the policy.

█ Where there is a distinct and separate assertable claim, the "per occurrence" limits apply. *See Cano,* 656 S.W.2d at 271; *cf. Adams v. Allied Fidelity Insurance Company,* 753 S.W.2d 55, 56 (Mo.Ct.App. 1988) ("where * * * one indivisible claim arises from wrongful death, and no distinct and separately assertable claims are involved, the higher accident limit is not applicable"); *Lumley v. Farmers Insurance Company, Inc.,* 716 S.W.2d 455, 457–58 (Mo.Ct.App.1986) (*Cano* distinguishable because involved distinct and separately assertable claim).

There are two distinct claims in this case, the wrongful death claim by the estate and the consortium claim by Jamie Lynn Smith. Therefore, the per occurrence limits of the

policy are applicable, rather than the per person limits.

### III. CONCLUSION

Based on the foregoing, we hold that the American Standard insurance policy is void *ab initio.* We further hold that the uninsured motorist coverage provided by Cameron to Robert and Mary Freese may be stacked and that the per occurrence limits are available; that is, that the claimants are entitled to $150,000 in coverage under the policy. Accordingly, the judgment is affirmed.