Glendia EZELL, Plaintiff–Respondent,

v.

COLUMBIA INSURANCE COMPANY,
Defendant–Appellant.

No. 21099.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 20, 1996.

Motion for Rehearing or Transfer
Denied Jan. 10, 1997.

James E. Spain, Spain, Merrell & Miller, Poplar Bluff, for defendant-appellant.

Douglas R. Kennedy, Kennedy & Kennedy, Poplar Bluff, for plaintiff-respondent.

BARNEY, Presiding Judge.

Respondent Glendia Ezell, (Insured) brought suit under the uninsured motorist coverage of her automobile insurance policy against her insurer, Appellant Columbia Insurance Company (Insurer) for personal injuries arising from an accident wherein she was a passenger on a 1970 BSA Motorcycle, owned and driven by Insured's husband, Darrell Ezell (Husband). The trial court found in Insured's favor and awarded damages to her in the amount of $50,000.00. Insurer appeals.

The facts as jointly stipulated by the parties show that: (1) the 1970 BSA Motorcycle, owned by Husband, was not covered by a policy of liability insurance at the time of the accident; (2) Insured and her husband resided in the same household; and (3) the damages sustained by Insured were $50,000.00.

It was also jointly stipulated that theretofore, Insurer had issued a policy of insurance, Number PA00149260, providing coverage for a 1986 Ford Pickup, and that the "named insureds" under the policy were Insured and her husband.

PART C of said policy, designated "UNINSURED MOTORISTS COVERAGE", reads in pertinent part as follows:

A. We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury':

1. Sustained by an 'insured'; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'

B. 'Insured' as used in this Part means:

1. You or any 'family member.'

C. 'Uninsured motor vehicle' means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

. . . .

However, 'uninsured motor vehicle' does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any 'family member.'

The trial court made a finding that: (1) "the uninsured motor vehicle herein involved, a 1970 BSA motorcycle,[1] was owned by Darrel Ezell, the husband of Glendia Ezell, and a named insured under the policy of insurance, and therefore is not an 'uninsured motor vehicle' as defined by the policy"; but (2) "the limitation [the bolded portion of paragraph C of PART C] contained in said definition violates the public policy of Missouri as set forth in RSMo. Section 379.203 and is void."

Based upon the foregoing factual stipulations, the trial court entered judgment in favor of Insured in the amount of $50,000.00.

On appeal, Insurer raises two points of trial court error. In its first point, Insurer asseverates that the policy's provisions defining the term "uninsured motor vehicle" do not include any vehicle "owned by or furnished or available for the regular use of the named insured or any family member," citing Paragraph C of PART C of its policy, *supra*, and further that such definition, contrary to the trial court's holding, does not violate the public policy of the State of Missouri. Since the uninsured motor vehicle in this case was owned by a named insured, i.e., Husband, Insurer argues that judgment should have been entered in favor of Insurer.

---

1. There is no dispute as to the motorcycle qualifying as a land motor vehicle under the terms of the policy.

Insurer's second point argues that if indeed the definition of "uninsured motor vehicle" violated Missouri public policy it would be invalid only to the extent of $25,000.00, the amount of uninsured motorist coverage required under the provisions of § 379.203.1 and § 303.030.5.[2]

I

■ Section 379.203.1 provides in pertinent part that:

1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Section 303.030.5 reads in pertinent part as follows:

5. No such policy ... shall be effective under this section unless issued by an insurance company ... authorized to do business in this state ... every such policy ... is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property, to a limit of not less than ten

thousand dollars because of injury to or destruction of property of others in any one accident.

"The underlying public policy which prompted enactment of [§ 379.203] was to give persons insured by such coverage, when injured by an uninsured motorist, protection parallel to that which they would have had if they had been injured in an accident caused by a motor vehicle covered by the minimum liability requirements of the financial responsibility law."[3] *Otto v. Farmers Ins. Co.,* 558 S.W.2d 713, 717 (Mo.App.1977).

"Section 379.203 ... becomes a part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself." *Id.* (citing *Ward v. Allstate Ins. Co.,* 514 S.W.2d 576, 578 (Mo. banc 1974)); *see also Oberkramer v. Reliance Ins. Co.,* 650 S.W.2d 300, 302 (Mo.App.1983). "*Otto* stressed the personal nature of uninsured motorist coverage, and distinguished it from automobile liability insurance." *Bernardo v. Northland Ins. Co.,* 45 F.3d 272, 274 (8th Cir.1995).

"The conceptual nature of uninsured motorist insurance must be distinguished from other types of insurance, for example automobile liability insurance. The former is akin to accident insurance (albeit restricted to a limited type of accident) as it compensates for a loss suffered by an insured, as opposed to the latter which indemnifies an insured against liability for losses suffered by third parties." *Otto,* 558 S.W.2d at 718. "Thus, *uninsured motorist insurance should not be confused as inuring to a particular vehicle as in the case of automobile liability insurance.*" *Id.* (emphasis added). "[A]n insurer may limit the coverage afforded an insured under a policy only so long as the exclusion does not violate § 379.203 or the public policy behind it." *Adams v. Julius,* 719 S.W.2d 94, 96 (Mo.App.1986). While § 379.203 will be applied liberally to invali-

---

**2.** All statutory references to § 379.203.1 are to RSMo Cum.Supp.1991, and all statutory references to § 303.030.5 are to RSMo1986.

**3.** The Motor Vehicle Financial Responsibility Law is contained in §§ 303.010–303.370, RSMo1986.

date attempts by insurers to reduce benefits under applicable coverage, it cannot create coverage. *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137, 147 (Mo. banc 1980).

In *Hines v. Government Employees Ins. Co.,* 656 S.W.2d 262 (Mo. banc 1983), the Supreme Court of Missouri noted that "[t]he coverage for the named insured is not dependent on presence in an insured vehicle at the time of an accident involving an uninsured motorist, but is also applicable if the named insured is a pedestrian, *or is riding in someone else's automobile.*" *Id.* at 265 (emphasis added); *see also Schmidt v. City of Gladstone,* 913 S.W.2d 937, 941 (Mo.App.1996).

Insurer cites *Harrison,* 607 S.W.2d at 137 in support of its position that the policy exclusion as set out in bold, *supra,* applies in the instant case to preclude uninsured motorist coverage as to Insured herein. In *Harrison,* the operator of a motor vehicle lost control of his vehicle and caused injury to his wife and step-daughter, passengers in the vehicle. The vehicle involved in the single car accident had a policy of liability insurance containing a household exclusion preventing the wife and step-daughter from making a claim under the liability coverage provided.[4] Consequently, the passengers sought to invoke the uninsured motorist coverage under the *same* policy, since they were not otherwise covered due to the "household exclusion" clause.

The court concluded that the definition of "uninsured motor vehicle" could be limited where a policy was in effect on the vehicle involved in the accident. This was because by the policy's definition the vehicle the pas-

sengers were riding in was not an "uninsured highway vehicle." Instead, it was an "insured automobile." Since the operator/owner of the vehicle had insurance, this had the effect of making the operator or owner exempt from the sanctions of the Motor Vehicle Safety and Responsibility Law. Consequently, the passengers were not afforded coverage under the uninsured motorist provision of the policy. However, in its opinion, the *Harrison* court concluded that:

> [T]he term ["uninsured motor vehicle"] as used by the legislature refers to a vehicle whose operator or owner did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident.

*Harrison,* 607 S.W.2d at 144.

■ *Harrison* does not assist Insurer. This is because the facts in the case at bar are different than in the *Harrison* scenario. In the instant case, Husband is the sole owner of the vehicle involved in the accident. He had no insurance coverage on the vehicle involved in the accident. Having no insurance covering his vehicle he, therefore, is *not exempt* from the requirements of the Motor Vehicle Safety Responsibility Law. Thus, according to the rationale of *Harrison,* we can conclude that at the time of the accident that caused Insured's injuries, the vehicle was an "uninsured motor vehicle," as referred to in § 379.203.[5]

The Missouri Supreme Court's holding in *Shepherd v. American States Ins. Co.,* 671 S.W.2d 777 (Mo. banc 1984) is also instructive.[6] In *Shepherd* the policy under review contained a limitation provision similar to the

---

4. This case ante-dates the Missouri Supreme Court decision in *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479 (Mo. banc 1992), which invalidated household exclusion clauses up to the monetary limit required of a vehicle owner by the Motor Vehicle Financial Responsibility Law.

5. Insurer also cites *Hoerath v. McMahan,* 669 S.W.2d 281 (Mo.App.1984); *McEwen v. Menees,* 680 S.W.2d 414 (Mo.App.1984); *Miles v. State Farm Mut. Auto. Ins. Co.,* 519 S.W.2d 378 (Mo. App.1975) as being supportive of its position. All of the cases are distinguishable on their facts.

They each involve a single car accident wherein the vehicle involved in the accident *had insurance in place* at the time of the accident, and hence were considered insured vehicles, not uninsured vehicles. The vehicle involved in the instant case had no insurance in place.

6. The *Shepherd* decision is oriented toward a determination as to whether a widow who was a named insured in an automobile policy on passenger vehicles was entitled to "stack" uninsured motorist coverage provided by the passenger vehicles' policy. Although the case at bar is admit-

one in question herein.[7] The Supreme Court of Missouri held that the foregoing limitation was contrary to the public policy as set out in § 379.203 and thus invalid, stating that the "attempted limitation upon the uninsured motorist coverage by the owned vehicle exclusion in defendant's policy is clearly contrary to the principles announced in" *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976), *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266 (Mo. banc 1983) and *Hines, supra. Shepherd*, 671 S.W.2d at 779.

In *Gulf Ins. Co. v. American Family Mut. Ins. Co.*, 768 F.Supp. 272 (E.D.Mo.1991), the court concluded that Missouri law would find that a policy containing similar limitation language [8] as in the case at bar was not "consistent with the policy of the Missouri Uninsured Motorist Statute, Mo.Rev.Stat. § 379.203 (1986)." *Id.* at 273. The court stated:

> "To exclude uninsured motorist coverage to the named insured solely because he was occupying a vehicle owned by a resident of his household would be contrary to '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts [and those expectations] will be honored even though painstaking study of the policy provisions would have negated those expectations.' "

*Id.* (quoting *Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d 656, 661 (Mo.App.1980)).

We, therefore, conclude that statutory authority for limiting the uninsured motorist coverage, as attempted by the policy definition under consideration, is nowhere to be found in § 379.203, and the policy definition of what constitutes an "uninsured motor vehicle" is repugnant to the mandate of § 379.203 and is void as against public policy. *See Otto*, 558 S.W.2d at 719. Point denied.

## II

Insurer also argues that § 379.203 only requires mandatory uninsured motorist protection to the extent of $25,000.00 per person and $50,000.00 for two or more persons for bodily injury. *See* § 303.190.2, RSMo1986. Therefore, Insurer asseverates that "[i]n the event the definition of 'uninsured motor vehicle' is found to be invalid and against public policy, it is only invalid to the extent of the mandatory limit" which is $25,000.00.

In support of its contention, Insurer cites *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992). In *Halpin*, the Supreme Court of Missouri invalidated a "household exclusions" clause up to the monetary limit required of a vehicle owner by the Motor Vehicle Financial Responsibility Law, i.e., $25,000.00. The *Halpin* holding has compelling logic and we find that Insurer's second point is meritorious.

*Halpin* held that "the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, *subject to statutory limits.*" *Id.* at 482 (emphasis added).

*Halpin's* primary thrust is oriented toward the requirement mandated by § 303.025, RSMo1986 that every owner of a motor vehicle in Missouri shall maintain his financial responsibility in a manner provided by § 303.160, RSMo1986 while operating an automobile.[9] In particular, the opinion deals with a household exclusion law vis-a-vis the

---

tedly not a "stacking" case, the rationale utilized by the high court is enlightening.

7. "We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person: 1. While occupying ... any motor vehicle ... of any type owned by ... any family member ... which is not insured for this coverage under this policy." *Shepherd*, 671 S.W.2d at 778.

8. "This coverage does not apply to bodily injury to a person:

1. While occupying, or when struck by, a motor vehicle that is not insured under this Part, if it is owned by you or any resident of your household." *Gulf Ins.*, 768 F.Supp. at 273.

9. Section 303.160.1(1), RSMo1986 applicable herein, provides that "Proof of financial responsibility when required under this chapter with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle may be given by filing: (1) A certificate of insurance...."

mandatory limits of liability insurance coverage imposed by 303.190.2 and .7, RSMo.1986. These statutory provisions read, in inverse order, as follows:

### § 303.190.7

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. *With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section.* (Italics added.)

### § 303.190.2(2)

Such owner's policy of liability insurance:

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured ... for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles ... subject to limits ... as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident....

Insured argues, however, that there is no such limiting language in § 379.203 treating uninsured motorist coverage, as appears in § 303.190.7, RSMo1986 treating mandatory coverage of policies of motor vehicle liability insurance covering household residents. *See* italicized provisions found in § 303.190.7, RSMo1986 *supra.*

Again, reiterating Section 379.203, it reads in pertinent part as follows:

No automobile liability insurance ... shall be delivered or issued ... in this state ... unless coverage is provided ... in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

Section 303.030.5 provides that:

[E]very such policy ... is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident....

While it is readily apparent there is a difference among the statutory provisions in *Halpin* and the instant case, conceptually it is a distinction without a difference. This is because both sets of statutes mandate the same minimum coverages in a motor vehicle/automobile liability policy. Compare §§ 303.030.5 and 303.190.2.

The purpose behind the 1986 amendment to the Motor Vehicle Financial Responsibility Law was:

[T]o make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators.... The purpose would be incompletely fulfilled if the household exclusion clause were fully enforced.... We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, *subject to the statutory limits.*

*Halpin,* 823 S.W.2d at 482 (emphasis added).

With regard to uninsured motor vehicles, *Otto* stated that:

The underlying public policy which prompted enactment of this statute was to give persons insured by such coverage, when injured by an uninsured motorist,

protection parallel to that which they would have had if they had been injured in an accident caused by a motor vehicle *covered by the minimum liability requirements of the financial responsibility law.*

*Otto,* 558 S.W.2d at 717 (emphasis added).

While § 379.203 dictates the minimum requirements for uninsured motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements. *Lemmons v. Prudential Prop. & Cas. Ins. Co.,* 878 S.W.2d 853, 855 (Mo.App.1994). So long as policy provisions meet the minimum requirements of the law and do not conflict with it, the parties remain free to create the insurance contract of their choice. *Omaha Indemnity Co. v. Pall, Inc.,* 817 S.W.2d 491, 498 (Mo. App.1991); *see also Schmidt v. City of Gladstone,* 913 S.W.2d 937, 940 (Mo.App.1996). The foregoing is subject to the proviso that the policy as written will be enforced unless the terms are ambiguous. *Hempen v. State Farm Mut. Auto Ins. Co.,* 687 S.W.2d 894 (Mo. banc 1985).

We, therefore, hold in the instant case that the provisions of § 379.203 and § 303.030.5 require mandatory uninsured motorist protection to the extent of $25,000.00 per person in Policy Number PA00149260. Further, since the definition of "uninsured motor vehicle" as defined in the policy is only invalid to the extent of the aforementioned mandatory limit required by law, it is otherwise valid as to any coverage exceeding the mandatory amount. *See* parallel discussion in *State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523, 526 (Mo. banc 1995).

Therefore, that part of the judgment of the trial court finding that the definition of "uninsured motorist vehicle," as contained in Policy Number PA00149260 is invalid and violative of public policy, is affirmed up to the mandatory limit required by § 303.030.5. The remaining part of the judgment of the trial court awarding Insured damages in the amount of $50,000.00 is reversed and remanded to the trial court for purposes of entry of judgment in favor of Insured in the amount of $25,000.00 as against Insurer, together with her costs herein.

GARRISON and PREWITT, JJ., concur.