**Mary Jo DAWSON, Plaintiff/Respondent,**

v.

**Sherry L. DENNEY–PARKER and Farm Bureau Town & Country Insurance Company Of Missouri, Defendants/Appellants.**

No. 72462.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 1997.

Application for Transfer Denied
June 16, 1998.

Robert D. Younger, Amelung, Wulff & Willenbrock, St. Louis, for appellant.

John E. Tresslar, Brown & Crouppen, St. Louis, for respondent.

JAMES R. DOWD, Judge.

This is a suit to recover uninsured motorist benefits on an automobile liability insurance policy. Mary Jo and Robert J. Dawson maintained an automobile insurance policy with Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau"). The policy provided $100,000 in uninsured motorist coverage. The accident in question involved a collision between automobiles owned by Mrs. Dawson and Sherry Denney–Parker.

On January 21, 1993, Mrs. Dawson was operating her automobile in a northerly direction on Route B in Jefferson County, Missouri while Ms. Denney–Parker was driving in the opposite direction. An unidentified motor vehicle was driving some distance ahead of Mrs. Dawson on northbound Route B and attempted to pass another northbound vehicle. The unidentified vehicle entered Ms. Denney–Parker's lane and she swerved to avoid it. As a result, Ms. Denney–Parker's automobile crossed over the center line and into the northbound lane of traffic and ultimately collided head-on with Mrs. Dawson's automobile. The unidentified vehicle did not stop and its owner has not been identified. The unidentified vehicle never came into physical contact with Mrs. Dawson's or Ms. Denney–Parker's automobile.

Mrs. Dawson initiated a lawsuit against Farm Bureau to recover uninsured motorist benefits under her insurance policy for injuries she sustained due to the negligence of the driver of the unidentified vehicle. The jury returned a verdict in favor of Mrs. Dawson in the amount of $100,000. The trial court entered judgment in accordance with the jury verdict. The trial court denied Farm Bureau's post-trial motion to reduce the judgment to $25,000 to conform to the law and the evidence.

Farm Bureau raises two points on appeal. First, Farm Bureau argues that the trial court erred in denying its post-trial motion because the policy's "hit-and-run motor vehicle" definition is invalid only up to the $25,000 minimum requirement for uninsured motorist coverage provided by section 379.203(1) RSMo 1994. In its second point, Farm Bureau maintains that the trial court erred in

denying its post-trial motion because Mrs. Dawson failed to make a submissible case for uninsured motorist coverage pursuant to the terms and conditions of her policy of insurance. Affirmed.

## I.

■ The issue presented is whether section 379.203(1) amends Farm Bureau's insurance policy to provide the statutory minimum uninsured motorist coverage with no physical contact requirement, or whether it simply eliminates the policy's physical contact requirement. In *Dragna v. Auto Owner's Mutual Insurance Co.*, 687 S.W.2d 277, 278 (Mo. App. W.D.1985), the court stated that section 379.203 "clearly eliminated the contact or identity requirement." Although the *Dragna* court's statement was dicta, our conclusion is the same.

Construction of a statute is an issue of law and our review is *de novo*. *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). When the interpretation or meaning of a statute is challenged, appellate courts must ascertain the intent of the legislature from the statute's language, giving the words of the statute their plain and ordinary meaning. *Trailiner Corp. v. Director of Revenue*, 783 S.W.2d 917, 920 (Mo. banc 1990). If necessary, we will harmonize the provisions of the statute in order to give effect to that intent. *20th & Main Redevelopment Partnership v. Kelley*, 774 S.W.2d 139, 141 (Mo. banc 1989); *Sermchief v. Gonzales*, 660 S.W.2d 683, 689 (Mo. banc 1983). "Legislative intent and the meaning of words used in the statute also can be derived from the general purposes of the legislative enactment. Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment." *Sermchief*, 660 S.W.2d at 688 (internal citations omitted); *see also BCI Corp. v. Charlebois Construction Co.*, 673 S.W.2d 774, 780 (Mo. banc 1984).

To determine the purposes behind the enactment of section 379.203(1), we briefly review the evolution of mandatory uninsured motorist coverage in Missouri. Prior to 1967, insurers were not required to provide uninsured motorist coverage. The General Assembly enacted section 379.203 in 1967 to require automobile insurance policies to include a minimum level of uninsured motorist coverage. At that time, section 379.203(1) provided:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . . .

Laws 1967, p. 516 (codified at Sec. 379.203(1) RSMo Cum.Supp.1967). Although the 1967 statute established mandatory uninsured motorist coverage in an amount not less than that specified in section 303.030,[1] insurers could lawfully exclude uninsured motorist coverage if there was no physical contact between the insured and the uninsured motor vehicle, and many insurers began to so restrict coverage. *See, e.g., Ward v. Allstate Ins. Co.*, 514 S.W.2d 576, 578–79 (Mo. banc 1974). In 1982, however, the General Assembly amended section 379.203(1), adding the following provisions:

Such legal entitlement exists although the identity of the owner or operator of the motor vehicle cannot be established because such owner or operator and the motor vehicle departed the scene of the occurrence occasioning such bodily injury, sickness or disease, including death, before identification. *It also exists whether or*

---

1. Section 303.030(5) RSMo 1994 requires insurance policies to contain uninsured motorist coverage in the minimum amount of $25,000 per person for bodily injury or death with a maximum of $50,000 per accident.

*not physical contact was made between the uninsured motor vehicle and the insured or the insured's motor vehicle.*

Laws 1982, p. 602 (codified at Sec. 379.203(1) RSMo Cum.Supp.1982) (emphasis added). No other amendments to section 379.203 are relevant to this appeal.

By enacting the 1982 amendment the General Assembly intended to preclude insurers from requiring proof of physical contact before paying uninsured motorist benefits under the policy. Our conclusion is based on the language used in the 1982 amendment. The amendment speaks in terms of "legal entitlement." The 1967 statute contains the similar phrase "legally entitled" to refer to the insured's right of recovery against uninsured motorists. Harmonizing these provisions, we construe the 1982 amendment's use of "legal entitlement" to refer to an insured's right to recover from the uninsured motorist, not the insured's right to recover the statutory minimum uninsured motorist benefits.

Farm Bureau principally relies on *Ezell v. Columbia Insurance Co.*, 942 S.W.2d 913 (Mo.App. S.D.1996) in support of its argument that it is only liable for the statutory minimum. In *Ezell*, the plaintiff was injured while riding as a passenger on an uninsured motorcycle owned by her husband. The plaintiff sued her insurer to recover uninsured motorist benefits under an insurance policy she maintained on another automobile. That policy, however, defined "uninsured motor vehicle" so as to exclude vehicles owned by the insured or any family member of the insured. Although the trial court determined that the motorcycle did not qualify as an uninsured motor vehicle under the policy, the court held that the policy's definition violated the public policy of Missouri as set forth in section 379.203(1), and entered judgment in favor of the plaintiff in the amount of $50,000. On appeal, the court reversed the judgment over $25,000, concluding that "the definition of 'uninsured motor vehicle' as defined in the policy is only invalid to the extent of the ... mandatory limit required by law." *Id.* at 919.

*Ezell* is clearly distinguishable from the present case. Most important, the *Ezell* court's interpretation of section 379.203(1) was confined to the provisions enacted in 1967, and did not address the language added by 1982 amendment. Additionally, the policy in *Ezell* provided no uninsured motorist coverage for injuries caused by a vehicle owned by the insured or a member of the insured's family. This coverage gap violates the public policy behind the uninsured motorist statute of providing "protection parallel to that which [insureds] would have had if they had been injured in an accident caused by a motor vehicle covered by the minimum liability requirements of the financial responsibility law." *Otto v. Farmers Ins. Co.*, 558 S.W.2d 713, 717 (Mo.App.1977). However, because no uninsured motorist coverage was provided by the policy, the *Ezell* court held that only the minimum uninsured motorist coverage was required.

In this case, the Dawsons paid for and their policy provided uninsured motorist coverage exceeding the statutory minimum. Accordingly, we hold that the 1982 amendment prohibits insurers from restricting coverage to insureds legally entitled to recover damages from uninsured motorists regardless of whether there was physical contact. Farm Bureau's attempt to limit coverage exceeding the statutory minimum by imposing a physical contact requirement violates section 379.203 and is ineffective and void. Point denied.[2]

## II.

■ Farm Bureau's second point is that the trial court erred in denying its motion to reduce the judgment to $25,000 because Mrs. Dawson did not make a submissible case for uninsured motorist coverage under the policy. According to Farm Bureau, Mrs. Dawson did not present evidence that the unidentified motor vehicle was not insured by a liability policy or that the unidentified motor vehicle came into physical contact with her automobile. Farm Bureau therefore argues that Mrs. Dawson's claim was submitted pursuant to section 379.203, and not the policy.

---

2. Of course, insurers are not legally required to provide uninsured motorist coverage exceeding the statutory minimum so long as the limitation does not violate section 379.203 or the public policy behind it. However, this is not the case before us because Farm Bureau's policy provides $100,000 in uninsured motorist benefits.

As a result, Farm Bureau contends that its liability to Mrs. Dawson cannot exceed the statutory minimum of $25,000 per person. We disagree.

In this point, Farm Bureau argues that Mrs. Dawson failed to present evidence that the unidentified vehicle satisfied the policy's definition of "uninsured motor vehicle." The policy defines "uninsured motor vehicle" as including a "hit-and-run motor vehicle." A "hit-and-run motor vehicle" is later defined as:

> [A] motor vehicle which causes bodily injury to an insured arising out of physical contact of such motor vehicle with the insured or with an automobile the insured is occupying at the time of the accident; provided (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run' motor vehicle. . . .

Contrary to Farm Bureau's claim, the policy does not require proof of the existence of a liability policy covering "hit-and-run" motor vehicles as a prerequisite to collecting uninsured motorist benefits.

Mrs. Dawson clearly made a submissible case under the policy because she was not required to prove physical contact. "Section 379.203(1) becomes . . . part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself." *Ezell*, 942 S.W.2d at 915 (Mo.App. S.D.1996). In fact, Farm Bureau's policy states that "[a]ny terms of this policy which are in conflict with the Statutes of the State wherein this policy is issued are hereby amended to conform to such Statutes." As discussed previously, section 379.203(1) eliminated the physical contact requirement that Farm Bureau now seeks to impose on Mrs. Dawson. Therefore, by operation of law, Farm Bureau's policy has been amended to conform with the provisions of section 379.203(1). Point denied.

The judgment of the trial court is affirmed.

CRANE, P.J., and RHODES RUSSELL, J., concur.