**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,**
Plaintiff–Appellant,

v.

**Austin BRACHT, Bobby J. Stafford, Health Cost Controls, Empire Blue Cross/Blue Shield of Middleton, N.Y., and State of Missouri, Department of Social Services, Division of Medical Services, Defendants–Respondents.**

No. 24800.

Missouri Court of Appeals,
Southern District,
Division One.

March 10, 2003.

Motion for Rehearing or Transfer Denied
April 22, 2003.

Application for Transfer Denied
May 27, 2003.

David F. Sullivan, Schmidt, Kirby & Sullivan, P.C., Springfield, for appellant.

Edward J. Hershewe, Daniel Robert De-Foe, Hershewe Law Firm, P.C., Joplin, for respondent.

PHILLIP R. GARRISON, Judge.

American Standard Insurance Company of Wisconsin ("American Standard") appeals from an adverse judgment entered in its suit for declaratory judgment. Each of its six points on appeal is directed to what it perceives as erroneous trial court conclusions concerning "set-off" provisions in the automobile liability and uninsured motorist portions of a policy issued by it.

American Standard issued an automobile liability policy to Bobby J. Stafford ("Stafford") providing liability coverage of $50,000/$100,000, and uninsured motorist coverage of $25,000/$50,000. On December 24, 1996, while the policy was in force, Austin Bracht ("Bracht") was a passenger in Stafford's vehicle when it was involved in an accident with an allegedly uninsured vehicle operated by Steven Lacey ("Lacey"). Bracht made a demand on Ameri-

can Standard for its policy limits under both its liability and uninsured motorists coverages. He subsequently filed suit against Stafford and Lacey, claiming personal injuries, and against American Standard based on its uninsured motorist coverage.

American Standard filed this declaratory judgment suit seeking a determination of the rights and obligations of the parties under the terms of its policy. In its petition, American Standard sought a declaration that, because of the set-off provisions in the policy, there would be a total of $50,000 of coverage available under its policy rather than $75,000.

One of the set-off provisions referred to in the petition is under the liability coverage, and one is under the uninsured motorists coverage. The set-off provision in the liability portion of the policy ("liability set-off") reads:

LIMITS OF LIABILITY

The limits of liability shown in the declarations apply, subject to the following:
1. The bodily injury liability limit for "each person" is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one occurrence.
2. Subject to the bodily injury liability limit for "each person," the bodily injury liability limit for "each occurrence" is the maximum for bodily injury sustained by two or more persons in any one occurrence.
3. The property damage liability limit for "each occurrence" is the maximum for all damages to all property in any one occurrence.

We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved.

*Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the Uninsured Motorists coverage of this policy.*

(emphasis added). The set-off provision under the uninsured motorists coverage of the policy ("uninsured motorists set-off") provides:

LIMITS OF LIABILITY

The limits of liability of this coverage as shown in the declarations apply, subject to the following:
1. The limit for "each person" is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
2. Subject to the limit for "each person," the limit for "each accident" is the maximum for bodily injury sustained by two or more persons in any one accident.

We will pay no more than these maximums no matter how many insured persons, claims, claimants, or vehicles are involved in the accident.

*The limits of liability of this coverage will be reduced by:*
1. A payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable.
2. *A payment under the Liability coverage of this policy.*

(emphasis added). American Standard requested that the trial court declare that the "set[-]off provisions" of the policy were "valid and enforceable, and thereby preclud[ed] [Bracht] from entitlement to liability coverage of $50,000.00 and uninsured motorists coverage of $25,000.00 under this policy." American Standard therefore asked that the court "enforce the set[-]off language contained therein so as to limit

total recovery under the terms and conditions of the subject policy to $50,000.00, instead of $75,000.00[.]"

In its judgment, the trial court noted evidence that separate premiums were charged for the liability coverage and the uninsured motorists coverage, and that the premium charged for the bodily injury liability coverage of $50,000/$100,000 was more than the premium would have been for bodily injury liability coverage of $25,000/$50,000.

In its conclusions of law, the trial court referred to the provisions of Sections 303.030 and 379.203.[1] Chapter 303 is known as the Motor Vehicle Financial Responsibility Law ("MVFRL"). Section 303.010. Section 303.025(1) provides that no owner of a motor vehicle shall operate, register or maintain registration of a motor vehicle, or permit another person to operate such vehicle unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state. Section 303.030(5) provides, in pertinent part, that:

> every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident[.]

Section 303.190(2) also provides that an owner's motor vehicle liability policy shall provide liability coverage of $25,000/$50,000.

Section 379.203(1) provides, in pertinent part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein ... in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom[.]

The trial court concluded that one purpose of Section 379.203 is to establish a minimum level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor, and that it requires that coverage in the amounts mandated by the MVFRL not be diminished by contractual limitation of those amounts, absent express statutory authority therefor. The court explained that if the uninsured motorist set-off were enforced, Stafford would have $50,000 of coverage, consisting entirely of the policy's $50,000 liability coverage. It also observed that if the liability set-off were enforced, Stafford would have $50,000 of coverage, consisting of $25,000 for the policy's liability coverage and $25,000 for the policy's uninsured motorist coverage. In either instance, the trial court said, the available coverage would be less than if Stafford had been involved in an accident with an insured motorist.[2]

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

2. Although not directly an issue on this appeal, it appears the trial court's conclusion in this regard is incorrect. As indicated earlier,

The trial court held that both set-off provisions defeated the purpose of Section 379.203 [3] and were, therefore, void and unenforceable as contrary to public policy; that "the paying a[sic] higher premium for the additional coverages, American Family [4] will be unjustly enriched by the set-off provisions"; and that an attempt to limit the coverage provided in the policy would create an ambiguity, which should be construed against American Standard. The trial court entered its judgment that the policy in question exposed American Standard to liability in the amount of $50,000 under the liability coverage and $25,000 for uninsured motorists coverage, and that it was obligated to pay any amount awarded to Bracht against Stafford up to a limit of $75,000.[5] American Standard appeals.

■■■ In reviewing a court-tried case, we must sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[6] In applying this standard of review, we give considerable deference to judgments turning on evidentiary and factual evaluations by the trial court, but no such deference is afforded when the

law has been erroneously declared or applied. *In re Marriage of Fry*, 827 S.W.2d 772, 773 (Mo.App. S.D.1992). Interpretation of the meaning of an insurance policy is a question of law. *Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 866 (Mo.App. E.D.1997).

■■■ In its first point, American Standard asserts that the trial court erred in concluding that both set-off provisions of the policy are void and unenforceable as contrary to public policy. It argues that only $25,000 is required in Missouri as minimum limits for the liability and uninsured motorist coverages, and makes a point of the fact that it is not seeking to enforce the uninsured motorist set-off. It contends, therefore, that under these facts liability coverage would be reduced by the $25,000 uninsured motorist coverage so that $25,000 in bodily injury liability coverage would be available, and the whole of the $25,000 in uninsured motorist coverage would be available. Under this scenario, American Standard argues that the minimum limits of both coverages required under the MVFRL would be met.

■■■ In *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993), the court held that insurance policies are

---

the minimum limits for automobile liability coverage in Missouri is $25,000/$50,000. Sections 303.025(1), .030(5), .190(2). Twenty-five thousand dollars is all Missouri law required Stafford to carry in liability coverage for bodily injury to one person. *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 92 (Mo. banc 2000). That is all he was entitled to expect. *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. banc 1992).

3. Section 379.203 deals only with the minimum limits required for uninsured motorist coverage. Therefore, the liability set-off, by reducing the available liability coverage here, would not be diminishing the requirements of that statute.

4. We presume this was a typographical error and that the court intended to refer to American Standard.

5. Although not stated, it appears that the trial court intended to declare that there is $50,000 in liability coverage on Bracht's claim against Stafford, and $25,000 of uninsured motorist coverage.

6. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2002).

to be enforced as written absent an ambiguity or a statute or public policy requiring coverage. *See also Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 601 (Mo.App. W.D.1995); *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo.App. E.D.1993); *Mazzocchio v. Pohlman,* 861 S.W.2d 208, 211 (Mo.App. E.D.1993); *Childers v. State Farm Fire & Cas. Co.,* 799 S.W.2d 138, 140 (Mo.App. E.D.1990); *State Farm Mut. Auto. Ins. Co. v. Andrews,* 789 S.W.2d 144, 146 (Mo. App. E.D.1990). Even more to the point is *Shelter Mut. Ins. Co. v. Ridenhour,* 936 S.W.2d 857, 858 (Mo.App. E.D.1997), where the court said the issue was whether the policy in question, as it is written, violates the MVFRL and the public policy of Missouri. The provisions of an insurance contract that do not violate public policy will be enforced as written, while those that do will be ignored and held to be unenforceable. *Farmers Ins. Co. v. McFarland,* 976 S.W.2d 559, 565 (Mo.App. W.D.1998).

■ In response to this first point, we note initially that the policy provisions in issue here are clear and unambiguous. *See Halpin* at 483; *Douthet v. State Farm Mut. Auto. Ins. Co.,* 546 S.W.2d 156, 157 (Mo. banc 1977). The trial court's conclusion to the contrary, which is the subject of American Standard's sixth point on appeal, was erroneous. Accordingly we consider the trial court's holding that the set-off provisions were violative of public policy or statutes.

American Standard concedes that Sections 303.030, 303.190, and 379.203 set the minimum limits of liability and uninsured motorist coverage that a Missouri motor vehicle liability insurance policy must provide. It argues, however, that since the policy in this case provides $50,000/$100,000 in liability coverage and $25,000/$50,000 in uninsured motorist coverage, and

since it seeks to enforce only the set-off provision reducing the liability coverage by the amount of the uninsured motorist coverage, there is no violation of statute or public policy. In support, it cites *Windsor Ins. Co. v. Lucas,* 24 S.W.3d 151, 154 (Mo. App. E.D.2000), for the contention that there is no prohibition in Missouri against an insurance contract setting forth the maximum amount an insurer will pay in one part, and then stipulating the circumstances under which the insurer may lower the maximum amount, so long as the contract does so in plain and unambiguous terms.

■ *Windsor* involved an automobile liability policy that provided maximum coverage for bodily injuries of $100,000/$300,000. The policy, however, also contained a "step-down" provision limiting coverage to $25,000/$50,000, the minimum insurance coverage required under Missouri's MVFRL, in the event the injuries were caused by a non-relative driver whom the named insured permitted to drive the vehicle. The *Windsor* court held that the "step-down" provision there did not violate public policy, saying that "Missouri public policy does not preclude 'step-down' provisions in insurance policies which contain lesser liability limits for permissive drivers so long as the lesser limits comply with the minimum limits provided in the Missouri [MVFRL]." *Id.* at 154. The *Windsor* court's condition that the lesser limits of the "step-down" provision must comply with the minimum limits under the Missouri MVFRL is an obvious acknowledgment of the fact that the minimum insurance limit required by that law is the public policy of this state. *Id.* at 154. *See Andrews* at 146 ("The Safety Responsibility Law reflects the public policy of this state to assure financial remuneration for damages sustained through the negligent operation of motor vehicles").

American Standard also argues that enforcing the liability set-off provision here is consistent with Missouri cases holding that the household exclusion provision in automobile liability policies is enforceable above the minimum limit of $25,000. In support, it cites *Halpin,* holding that a household exclusion in an automobile liability policy is enforceable with reference to coverage limits in excess of the minimum limits required by the MVFRL. The *Halpin* court said, "[w]e believe that the legislature had the purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, subject to the statutory limits." *Id.* at 482. The court also rejected the insured's contention that the household exclusion should be unenforceable above the statutory minimum limits required by Section 303.190(2). *Id.* Accordingly, it concluded that the MVFRL "effects a partial invalidity" of the household exclusion clause of the policy. *Id.* at 480.

Applying the principles reflected in *Windsor* and *Halpin* to the facts here, we hold that the liability set-off in the American Standard policy whereby amounts owing under the liability coverage are reduced by any amount paid under the uninsured motorist coverage is contrary to public policy and unenforceable to the extent it would result in an infringement of the minimum liability coverage required by the MVFRL. Consistent with *Halpin,* however, such a set-off does not violate public policy if its application would result in liability coverage equal to or greater than the minimum required by the MVFRL. To this extent, the trial court erred in holding that the liability set-off is void as contrary to public policy.

■ Although American Standard does not propose to invoke the uninsured motorist set-off in this case, the trial court declared the entire set-off scheme void as contrary to public policy. Therefore, it is necessary that we also consider the uninsured motorist set-off.

Section 379.203, which requires that policies include uninsured motorist coverage with limits at least equaling the minimum limits for automobile liability policies, is also a part of this state's public policy. *Webb v. State Farm Mut. Auto. Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App.K.C.1972). *See also Otto v. Farmers Ins. Co.,* 558 S.W.2d 713, 717 (Mo.App.1977). Consistent with these cases, the court in *Automobile Club Inter–Insur. Exch. v. Diebold,* 511 S.W.2d 135, 138 (Mo.App.1974), held that a limiting clause restricting uninsured motorist coverage to the statutory minimum did not undermine the purpose of Section 379.203.

A number of Missouri cases have dealt with attempts to reduce uninsured motorists coverage by the amount paid or payable under workers' compensation laws or under medical payments coverage in an automobile liability policy. An early case often cited is *Webb.* There, the uninsured motorist policy provided that any amount payable under that coverage would be reduced by all sums paid or payable under the medical payments coverage provided by that policy. *Id.* at 150. The uninsured motorist coverage was for the minimum limits required at that time by Section 379.203. In holding that the policy provision permitting reduction of the uninsured motorist coverage was unenforceable, the court held that the effect of the reduction clause was to reduce that coverage below the statutory minimum in derogation of the statutory requirement and in violation of public policy. *Id.* It said that the purpose of the uninsured motorist statutes is to give the same protection to a person injured by an uninsured motorist as the person would have had if he or she had been injured in an accident caused by an

automobile covered by a standard liability policy. *Id.* at 151.[7] The *Webb* court said that the public policy in Missouri is that an insured under uninsured motorist coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the MVFRL. *Id.* at 152.

*Steinhaeufel v. Reliance Ins. Cos.*, 495 S.W.2d 463 (Mo.App.1973), involved two automobile liability policies, each containing uninsured motorist coverage providing the minimum limits required by Section 379.203. One policy ("Reliance") was issued to the owner of the car the plaintiff was operating when he was involved in an accident with an uninsured motorist. It was stipulated that this policy provided the primary coverage for the accident in question. The other policy ("State Farm") was issued to the plaintiff, and contained a provision stating that, with respect to bodily injury to an insured while occupying a non-owned automobile, it would apply only as excess insurance, and then only in the amount by which the applicable limit of liability of that coverage exceeded the sum of the applicable limits of liability of all other such insurance. *Id.* at 466. The plaintiff's damages were $15,000, and Reliance paid its policy limit of $10,000. *Id.* at 468. State Farm, however, contended that it owed none of its uninsured motorist coverage because its coverage limit did not exceed the limits under the Reliance policy. *Id.* The court cited *Webb* in holding that the plaintiff was entitled to receive the balance of his damage ($5,000) under the State Farm policy, saying that "[w]here such coverage has been provided, the insurer may not avoid its statutorily imposed liability by insertion in the policy of a limiting clause which restricts the insured from receiving the benefit of that coverage." *Id.* at 468. It said, however, that "the statute does not place any top limitation on coverage but provides coverage for not less than the limits required under the law . . . ." *Id.* at 467.

*Douthet* involved a policy containing uninsured motorist coverage tempered by a provision stating that any amount payable under that coverage shall be reduced by amounts paid under the workers' compensation law. *Id.* at 157. Our supreme court held that earlier cases such as *Webb* required that coverage in the amounts required by the Safety Responsibility Law "not be diminished" by contractual limitation, absent express statutory authority. *Id.* at 159.

The Missouri Supreme Court again dealt with a policy containing uninsured motorist coverage as well as policy language that any amount payable under that coverage would be reduced by amounts paid and the present value of all amounts payable under any workers' compensation law in *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 270 (Mo. banc 1983). There the court held, as it did in *Douthet*, that the provision was ineffective because of the public policy implicit in Section 379.203. *Id. Williams v. Casualty Reciprocal Exch.*, 929 S.W.2d 802 (Mo.App. W.D.1996), was another case

---

**7.** The court in *Douthet* disagreed with the analysis in *Webb* that uninsured motorist coverage was designed to give the same protection to one injured by an uninsured motorist that that person would have if the tortfeasor had been covered by a standard automobile liability policy. 546 S.W.2d at 157–58. In *Kuda v. American Family Mut. Ins. Co.*, 790 S.W.2d 464, n. 1 (Mo. banc 1990), the court said that the *Douthet* court's statement disapproving *Webb*'s interpretation of Section 379.203 was *dictum*. In *Kuda*, the court held that the purpose of Section 379.203 "is to establish a level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." *Id.* at 467.

where the policy provided that any amounts payable under the uninsured motorist coverage would be reduced by all sums paid or payable because of any workers' compensation law. There the court held that, based on *Cano* and *Douthet*, public policy prohibits enforcement of the offset provision "up to" the required minimum coverage of $25,000. *Id.* at 809.[8]

*Ezell v. Columbia Ins. Co.*, 942 S.W.2d 913, 914 (Mo.App. S.D.1996), involved a policy providing uninsured motorist coverage, but with a provision excluding from the definition of an uninsured motor vehicle a vehicle owned by or furnished for the regular use of the insured or a family member. There the plaintiff was injured while riding on an uninsured motorcycle, which was owned and operated by her husband. The insurer contended that, because of the exclusionary provision, the uninsured motorist coverage did not apply. *Id.* at 915. The *Ezell* court quoted *Adams v. Julius*, 719 S.W.2d 94, 96 (Mo.App. E.D. 1986), stating that "an insurer may limit the coverage afforded an insured under a policy only so long as the exclusion does not violate [Section] 379.203 or the public policy behind it." *Id.* Accordingly, we held that the policy definition in question was repugnant to the mandate of Section 379.203 and void as against public policy. *Id.* at 917. The insurer argued, however, that even if that were the case, that statute only requires uninsured motorist coverage of at least $25,000/$50,000. We agreed, citing *Halpin,* and applied the same reasoning from that case even though it had involved automobile liability coverage as opposed to uninsured motorist coverage. *Id.* at 918. In concluding that the public policy considerations apply only up to the mandatory minimum limit of $25,000, we said that "[w]hile [Section]

379.203 dictates the minimum requirements for uninsured motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements." *Id.* at 919. We also said that "[s]o long as policy provisions meet the minimum requirements of the law and do not conflict with it, the parties remain free to create the insurance contract of their choice." *Id.*

Bracht argues that the absence of a provision in the American Standard policy specifically requiring that the set-off would *only apply* above minimum limits set by the MVFRL itself establishes a violation of public policy. In doing so he refers to the fact that the policy in *Windsor* contained such a provision, and he argues that the absence of such a specific provision here dictates a different result than in *Windsor.* He also cites *Kuda,* and *Wilson v. American Standard Ins. Co.*, 792 S.W.2d 669 (Mo.App. E.D.1990), for the proposition that set-off clauses have been held to be in violation of public policy in cases where *no* such specific savings provisions were included in the policies. We are not persuaded by this argument in that the decision we reach acknowledges a protection of the minimum statutory coverage limits. Additionally, many of the cases cited above *resulted in enforcement of set-off provisions above the statutory minimum limits* when no such specific provisions were included in the policy.

To the extent the trial court held that the uninsured motorist set-off was violative of public policy if it were to reduce the uninsured motorist coverage below the $25,000/$50,000 statutory minimum required by Section 379.203, we affirm. To the extent it held that any reduction of the uninsured motorist coverage which would

---

8. The *Williams* court declined, for procedural reasons, to decide if the set-off provision in

that case would be enforceable above the statutory minimum limits. *Id.*

not infringe on such minimum coverage was void as against public policy, we reverse.

■ As indicated above, the trial court also found there was evidence that the premium charged by American Standard for the $50,000/$100,000 bodily injury liability coverage in the policy was more than it would have charged for $25,000/$50,000 limits for the same coverage. In three of its points relied on, American Standard attacks the finding that it would be unjustly enriched by the set-off provisions. In one, it contends that the theory of unjust enrichment is an affirmative defense that was waived because it was not pled; in another, it contends that Bracht had no standing to assert unjust enrichment because he was not a party to the contract, was not a named insured, and did not pay the premium; and finally, it contends that such a finding was not supported by substantial evidence or was against the weight of the evidence.

■ "Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." *Lincoln County Ambulance Dist. v. Pacific Employers Ins. Co.*, 15 S.W.3d 739, 744 (Mo.App. E.D.1998). An action for unjust enrichment is based on a theory of quasi contract or contract implied in law, the elements of which are (1) a benefit conferred by one party on another; (2) appreciation (or recognition) by the receiving party of the fact that what was conferred was a benefit; and (3) acceptance and retention of the benefit by the receiving party. *Woods v. Hobson*, 980 S.W.2d 614, 618 (Mo.App. S.D.1998). The most significant requirement is that the enrichment be unjust. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo.App. W.D.1984). For a quasi contract based upon unjust enrich-

ment to exist, it is not the actual amount of the enrichment that is determinative, but the amount of the enrichment which, as between the two parties, would be unjust for one party to retain. *White v. Pruiett*, 39 S.W.3d 857, 863 (Mo.App. W.D.2001).

■ "A party must set forth any 'matter constituting an avoidance or affirmative defense.' An affirmative defense is defined as one which 'seeks to defeat or avoid plaintiff's cause of action [and] ... avers that even if the petition is true the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility.'" *Holdener v. Fieser*, 971 S.W.2d 946, 950 (Mo.App. E.D.1998) (internal citations omitted). A defendant in a declaratory judgment action waives an affirmative defense by failing to plead it and the trial court may not premise its judgment on such a defense. *Id.* A party may, however, impliedly consent to trying the case on the basis of an unpled affirmative defense. *Id.*

Here, Bracht appears to have attempted to use unjust enrichment as an affirmative defense to the declaratory judgment suit even though that defense was not pled. Bracht, however, argues that unjust enrichment was tried by implied consent because he presented evidence on the issue without objection from American Standard. That evidence consisted of testimony, introduced by Bracht, of American Standard's "managing attorney" (the "witness") who supervised its legal department in Kansas City, Missouri and Springfield, Missouri. He testified that while American Standard sells auto liability policies with coverage limits of $25,000/$50,000 and $50,000/$100,000, whether the higher coverage was more expensive to purchase would depend on all the circumstances surrounding any given individual applying for the policy. With reference to Stafford, the witness said he did not know if the lower

coverage would be cheaper than the higher coverage because he was not an expert in that area, and was not involved in determining premiums. He said that he would "guess" or "assume" that the higher coverage would be more expensive because it would appear logical that you would pay more for a larger amount of coverage.

Assuming, without deciding, that unjust enrichment as an affirmative defense was tried by implied consent, we nevertheless must hold that the trial court erred in concluding that American Standard would be unjustly enriched by the set-off provisions because of the higher premium charged for the additional coverages. First, the uninsured motorist coverage contained in the policy here was for the minimum limits required by Section 379.203, $25,000/$50,000. We have held that that coverage may not be reduced by the set-off provision because it is the minimum required by Section 379.203. There could be no unjust enrichment with reference to that coverage.

■■■ Second, with reference to the liability coverage, we have held that the liability set-off provision is enforceable above the minimum mandatory limits of $25,000/$50,000 with the result that, in the circumstances of this case, that coverage potentially available for Bracht's suit would be reduced from $50,000 to $25,000. This does not mean, however, that the liability coverage available to Stafford would, under all circumstances, be reduced by the liability set-off provision. That would only occur when a payment is also made under the uninsured motorist coverage. The liability set-off would not be triggered under any other circumstance. The evidence, considered most liberally,[9] only indicates that the premium for $50,000/$100,000 lia-

bility coverage would be more than that charged for $25,000/$50,000. However, Stafford, as the insured under that coverage, still would receive the benefit of the increased coverage limits except where, as here, payments were to be made under the uninsured motorist coverage. Moreover, there was no evidence indicating that American Standard offered an automobile liability policy without the liability set-off provision. Consequently, there was no evidence whether the premium for a policy without the set-off provision would be higher than one with it and, if so, by how much. If indeed Bracht was relying on a theory of unjust enrichment, and if such a claim was properly before the court, he failed in meeting his burden to present evidence to support that contention. *Manfield v. Auditorium Bar & Grill, Inc.*, 965 S.W.2d 262, 267 (Mo.App. W.D.1998). *See also Green Quarries, Inc.* at 265.

■■■ Mere receipt of benefits is not enough to prevail in a claim of unjust enrichment when there is no showing that it would be unjust for a party to retain the benefit received. *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App. W.D.2000). In this regard, we are mindful that, as indicated above, parties are free to agree upon insurance contracts of their choice so long as the policy provisions are not ambiguous and meet the minimum requirements of the law. Here, we have held that the set-off provisions contained in the American Standard policy at issue may not be implemented so as to prevent there from being the mandatory minimum coverage under the liability and uninsured motorist provisions. Accordingly, there is available under this policy, and under these circumstances, $50,000 of total coverage, the same total of insurance coverage that would result from implementing the set-off

---

**9.** A witness' testimony predicated on a guess or speculation with no factual basis does not constitute substantial evidence and has no probative value. *Stearns v. Be–Mac Transport Co., Inc.* 621 S.W.2d 539, 541 (Mo.App. E.D. 1981).

provisions as written and agreed to by American Standard and Stafford. There can be no unjust enrichment if the parties receive what they intended to obtain. *Kopff v. Economy Radiator Service*, 838 S.W.2d 449, 455 (Mo.App. E.D.1992).

The portion of the judgment holding that American Standard would be unjustly enriched by this policy is reversed. Because of our holding on this appeal, we need not consider American Standard's other point on appeal.

The judgment of the trial court is reversed to the extent that it held that the set-off provisions are void and unenforceable as contrary to public policy with relation to any amounts of coverage over and above the minimum amounts required by Sections 379.203, 303.025(1), 303.030(5), and 303.190; to the extent that it held that the limitations in coverage caused by the liability and uninsured motorist set-offs were ambiguous; and to the extent that it held that American Standard would be unjustly enriched by the set-off provisions as authorized to be enforced by this opinion. The judgment is affirmed to the extent that it held that the liability and uninsured motorist set-offs are void and against public policy to the extent their implementation would result in there being less liability coverage for bodily injury than the minimum required by Sections 303.030(5) and 303.190(2), and less coverage for uninsured motorist than that required by Section 379.203. The case is remanded to the trial court for the entry of a judgment consistent with this opinion.[10]

MONTGOMERY and BARNEY, JJ., concur.

---

10. Bracht's motion to dismiss appeal is denied.